BALDWIN L. HILLIKER AND ROSAMOND HILLIKER v.
NELSON COLEMAN.

*Waters and water-courses—Diversion of stream by upper proprie-
tor—Appeal—Record—Testimony taken before commissioner.*

1. The Court will take judicial knowledge that the natural water-
courses in this State have all decreased in volume, and many
of them been dried up, by the cultivation and clearing of the
country.

2. This case involves the question of the diversion of water from
an alleged natural water-course through which it had been
accustomed to run onto complainant's land, where he utilized
it for farm purposes, so as to deprive him of such use; and the
decree below, enjoining such diversion, is affirmed. The case is
one purely of fact.

3. The statement of an objection to testimony taken in a chancery
case, and the reason for it, in the simplest and shortest way,
is sufficient, and a discussion of it before the commissioner, if
deemed necessary by counsel, is not to be transcribed, and
made a part of the record, on appeal, under our practice.

Appeal from Oakland. (Stickney, J.) Argued October
12, 1888. Decided January 11, 1889.

Bill to restrain diversion of water-course. Defendant
appeals. Affirmed. The facts are stated in the opinion.

*John Fitz Patrick* and *Aaron Perry,* for complainants,
contended:

1. The proofs clearly establish that the stream in question was a
water-course, even across defendant's lands, and that, whether
that is true or not, it certainly had become a water-course when
it reached the highway, and before it passed onto complainants'
lands.

2. If the water-course was not such in a state of nature, it has
become such as the result of ditching, acquiesced in by com-
plainants for a number of years, they having permitted defend-
ant's title to extend on their land, and such ditch, having been

dug by mutual consent, is sufficiently a water-course so that defendant cannot legally divert it from complainant's land; citing *Freeman v. Weeks*, 45 Mich. 335, 48 Id. 255.

3. To constitute a water-course, constant flowing is not necessary. If water flows for any considerable portion of the year in a valley or depression, whether from springs or not, it is sufficiently a water-course to have valuable rights attach thereto; citing Washb. Easem. 279, 283, 468; Angell, Wat. (ed. 1877) § 4. (notes 1, 2); *McClure v. City of Red Wing*, 28 Minn. 186; *Gillett v. Johnson*, 30 Conn. 180; *Pyle v. Richards*, 17 Neb. 180; *Macomber v. Godfrey*, 108 Mass. 220; *Earl v. DeHart*, 12 N. J. Eq. 282; *Arnold v. Foot*, 12 Wend. 330; *Palmer v. Waddell*, 22 Kan. 352.

4. Even if the court should find that the water in question does not constitute what is technically a natural water-course, still, if it flows in a natural depression in sufficient quantities and for a sufficient length of time to be materially beneficial to complainants, and has so flowed for over fifteen years, the lands in question being agricultural lands, complainants have a right in the nature of an easement to have such flow continue; citing *Boyd v. Conklin*, 54 Mich. 583; *Gregory v. Bush*, 64 Id. 37; Gould, Wat. (ed. 1881) § § 266, 276; Angell, Wat. §§ 108 d, 108 e; *Martin v. Riddell*, 26 Penn. St. 415.

*Baldwin, Draper & Jacokes,* for defendant, contended :

1. As to what is a water-course, see Angell, Wat. § 4; and it must have a well-defined and substantial existence; citing *Ashley v. Wolcott*, 11 Cush. 195; *Shields v. Arndt*, 3 Green (N. J.) Ch. 246; and no action will lie for the interruptions of mere surface drainage; citing *Parker v. Newburyport*, 10 Gray, 28 and the rules are essentially different in reference to the accumulation of water from the fall of rain or melting snow; citing *Flagg v. Worcester*, 13 Gray, 607; *Dickinson v. Worcester*, 7 Allen, 19; *Gannon v. Hargadon*, 10 Id. 106; *Bliss v. Greeley*, 45 N. Y. 671; *Frazier v. Brown*, 12 Ohio St. 294; which last case is a strong one for defendant. See, also, *Roath v. Driscoll*, 20 Conn. 541, which contains all of the principles for which the defendant contends.

2. If there were any springs, their source and supply were sub-surface, and if defendant, in ditching and tiling his land for any purpose, tapped or cut off that supply, he did only what he had a right to do, and is not liable to complainants in any kind of an action. In doing what he did he in no way interferred with the surface channel, which was left in the same condition, if it had an existence, that it was in for years pre-

vious,—ready to carry off the surplus water of the floods
arising from rain or snow; citing *Ellis v. Duncan*, 21 Barb.
230; *Wheatley v. Baugh*, 25 Penn. St. 528; *Chasemore v.
Richards*, 2 Hurl. & Norm. 168; *Wadsworth v. Tillotson*, 15
Conn. 366; *Railroad Co. v. Peterson*, 14 Ind. 112; *Trustees v.
Youmans*, 50 Barb. 316, 45 N. Y. 362; *Pixley v. Clark*, 35 N.
Y. 528; *Livingston v. McDonald*, 21 Iowa, 160.

MORSE, J.    The defendant owns and occupies a farm
situated in the township of Farmington, in Oakland
county, this State.    He purchased the same in 1864, and
has ever since resided upon it.    The main part of this
farm lies upon the north side of an east and west high-
way.

Across the road from his premises, on the south, are
located the lands of the complainants.    On the same side
of the highway, and to the east of and adjoining the
Hilliker premises, is a piece of land belonging to the
defendant.    Some 40 rods north of this highway, upon
the lands of Coleman, there was, 40 or 50 years ago, a
small marsh, or wet, boggy place, of 3 or 4 acres, fed by
springs of living water.    Before the defendant purchased
the place, and over 40 years ago, a box was sunk in this
marsh, and means taken to collect the waters therein.
The water passed through a pipe from this box to a pen-
stock, at which place cattle and horses were watered, and
the water used generally for farm purposes.    The sur-
plus water, not needed or used for farm purposes, was
discharged on the ground at the pen-stock.    From this
marsh, running south across defendant's lands and the
highway and upon the premises of the complainants, was
a ravine or depression.    Some seven or eight years before
the commencement of this suit, the defendant laid tile
under ground along the line or course of this depression,
from near the pen-stock to the highway.    Through this
tile there has been an almost constant discharge of water
ever since, which flowed under the highway through a

sluice, and from thence found its way to Hilliker's land, where it was used by the complainants to water stock. The tile were what is called "four-inch tile," and the quantity of water discharged therefrom varied with the seasons.

The complainants filed their bill, claiming a natural water-course from this marsh through this depression nearly in the line of the tile lying to and upon their lands, which water-course was the natural outlet of the living or spring water of this marsh, increased in certain times and seasons of the year by the surface water accumulating from rains and melting snows, and which water had flowed through said depression for 30 years and upwards, and had for said years furnished, and then did provide, water for the use of said complainants in their fields to water their stock,—horses, cattle, and hogs,— and other conveniences in the use and enjoyment of their said premises; that Coleman had dug, excavated, and tiled a ditch in said natural water-course, bringing said water a portion of its course, in said water-course, in tile, and discharged the same on the north side of the highway, between his lands and those of the complainants; and that about a year before the filing of the bill the said Coleman had, with the consent of the complainants, dug and tiled the culvert across said highway, through which said water-course ran across said highway, and carried said water through and under said highway, and discharged the same on the south side of the road, and upon the premises of the complainants.

The bill further alleges that the said defendant, Coleman, is at the time of its filing engaged in digging a ditch, and has the same partly dug, intersecting said natural water-course on the north side of said highway, and running said ditch easterly to a point beyond the complainants' lands; and that he proposes and threatens

to carry the water coming through said tile in said natural water-course, in and through said ditch, extended across the highway, beyond the east line of complainants' premises, to and upon his own land on the south side of the road, thus totally diverting said water from their lands, to their irreparable injury and damage. They ask an injunction to restrain him from so doing.

The defendant, in his answer, denies the existence of any natural water-course, and claims that he has a right to the water as his own. He admits the construction of the tile-drain for the purpose of draining the swampy land upon his farm, and avers that by the construction of various drains he has accumulated a large amount of water, which did not flow on the surface of his land from the swamp to the highway, and which would not have flowed there had it not been for the artificial drains so constructed by him. Denies that the water gathering upon or coming from his swamp or marsh ever, while he has lived upon his farm, has flowed in any water-course, natural or otherwise, down over his land to the land of complainants, prior to the construction of said tile-drains. Avers that during the whole period of his ownership he has cultivated and cropped the entire surface of this ravine or depression. He admits that in times of freshets, and during seasons of the melting of large bodies of snow, the surface waters sometimes gather and flow down over his land, through this depression, to the highway; but these are only "spasmodic occasions, and continue only for a short time or times, and in no sense constitute a natural water-course."

Admits that he intends to dig a ditch to carry the water flowing through this tile-drain away from the premises of the complainants, and to and upon his own land, and avers that he has the right to do so; but he denies that he intends to or will deprive the complain-

ants of any water which had or would or could flow in a natural water-course upon the surface of defendant's land; nor will the said ditch interfere with the flow of surface water from his premises upon those of complainants, but was intended to and will only carry away the water which the defendant has collected and tiled at his own expense, as he had a right to do in the natural and proper drainage of his lands for agricultural purposes. Avers that what he intends to do will not injure or damage the complainants to any perceptible extent, and that he had offered to discharge the waters in said ditch by putting a water-trough on the line between his land on the south side of the highway and the lands of complainants, so that each could have the benefit of it, if Hilliker would lay the tile, furnished by defendant, in the ditch to be dug by the defendant, which offer Hilliker had refused.

A vast amount of conflicting testimony was taken before commissioners upon the issue thus made, and upon the hearing the court below granted a decree in accordance with the prayer of complainants, perpetually enjoining the defendant from digging or making any drains in such a way or manner as to prevent the surplus waters from his lands flowing therefrom in their natural course on and across the complainants' lands, saving only the right said defendant has in said waters, as an upper proprietor, to use the same for agricultural and domestic purposes while on his lands, and to properly and reasonably ditch and drain his lands, which must be done, if at all, in such a way as to return such surplus waters to their usual and natural channel and course, where they have heretofore flowed on defendant's lands to the highway.

It is not easy, from the conflict of testimony found in this record, to determine the right in the premises. But some things are settled and determined beyond controversy. There was, in the first place, a marsh or swamp

on the lands of Coleman, upon which there was standing
living water, coming out of the ground from springs
therein.   The only natural outlet of this water was
through this ravine to and upon the lands of the com-
plainants.   And in the early days of the settlement of
this section, according to the oldest inhabitants, there was
a rivulet, or " cow-tail " brook, as some of the witnesses
termed it, running through this ravine, except in the
dryest months of the summer, which was swelled to quite
a stream in wet times.   Water has stood for all these
years, at different seasons, in the highway, at which ani-
mals running in the road slacked their thirst.   And ever
since the complainants occupied their premises they have
had the benefit of this water, as did their grantors before
them.   There has always been a discharge at the pen-
stock on defendant's land, which has either found its way
to the highway, or been absorbed by the soil, or evapo-
rated by the sun.   There is a divergence of testimony as
to what became of the surplus water from this pen-stock,
but when the defendant laid his tile he followed the
course of this depression, and discharged the water, when
it naturally flowed, upon the highway.   He also aided in
tiling across the road, through the sluiceway, and upon the
lands of the complainants.   To now divert it would cer-
tainly deprive them of what they have always enjoyed,
and would be to their great injury and damage, as there
is no other living water upon their premises.

We do not think it necessary to enter into any discus-
sion as to the rights of these adjoining proprietors in the
surface waters collecting upon defendant's lands.   It is
evident from all the testimony that water flows continu-
ally through this tile-drain, and that such water has in
it, at all times of the year, living or spring water, and
that it is not composed entirely of absorbed surface
waters.   The maintaining of this tile-drain where it now

is, without disturbance or diversion, can be of no possible detriment to defendant in the use and enjoyment of his premises, as he has used and enjoyed them ever since his ownership and occupancy of the same. It is not necessary, as we view the testimony, in the "interest of good husbandry, and in the good-faith tillage of his farm," that this defendant should, after all these years, and after his voluntary action and acknowledgment that this depression was the natural outlet of the springs in his marsh, by the construction of the tile-drain now divert this water from the lands of the complainants

We can take judicial knowledge, we think, that the natural water-courses in this State have all decreased in volume, and many of them been dried up, by the cultivation and clearing of the country; and this most probably accounts for much of the testimony of the witnesses that, in the latter years, there has been no natural water-course upon these premises, and that they have never noticed any living water flowing through this ravine. But it is admitted that in every year there has been a flow of water in a stream from this swamp to the highway for a greater or less portion of the time. The defendant claims that it has always been surface water.

We are inclined to believe that at one time a natural water-course existed on these premises; and, at any rate, we are satisfied in justice and equity the Hillikers are now entitled to the water flowing in the tile-drain, and that the defendant has no right to divert it.

The decree of the court below is right, and will be affirmed, with costs.

We desire to call attention to this record. It consists of 895 pages, of which at least 80 are confined entirely to the discussion by counsel as to the relevancy of evidence, and their opinions of each other, and their conduct

73 Mich 12.

in the case; which discussion and opinions were not necessary to be recorded by the commissioner, or printed, and are absolutely of no value to the court. The money paid or to be paid to the commissioners for transcribing or for the printing of this matter cannot be included in any taxed costs. The statement of an objection and the reason for it in the simplest and shortest way is sufficient. A discussion of it before the commissioner, if deemed necessary by counsel, is not to be transcribed, and made part of the record under our practice.

The other Justices concurred.