RICHARDS *v.* CITY OF ANN ARBOR.

1. MUNICIPAL CORPORATIONS—TORTS—ACTIONS—OBSTRUCTION OF WATERCOURSE.

In an action against a city for damages resultant from its failure to enlarge a culvert sufficiently to carry additional waters brought to a creek by its system of storm sewers and other improvements, evidence examined, and *held*, that defendant's motion for a directed verdict, on the ground that it appeared by the undisputed testimony that the storm causing the injury was so extraordinary that it was not the duty of defendant to anticipate it, was properly denied, there being evidence from which the jury might have found that the failure to provide adequate outlet was at least a concurring cause of the injury.

2. SAME—TRIAL—INSTRUCTIONS—EXTRAORDINARY CHARACTER OF STORM—ESTOPPEL TO ALLEGE ERROR.

Defendant cannot allege error on the court's failure to characterize the storm as unusual and extraordinary, though its character as such was admitted by plaintiff, where defendant presented and had given requests on the theory that the character of the storm was a question of fact for the jury.

3. SAME — SUFFICIENCY OF CULVERT — EXTRAORDINARY STORM — LIABILITY OF CITY.

Where a culvert was so inadequate that it could not take care of such water as would come to it in case of an ordinary

storm which might reasonably be expected, and the injury to plaintiff's property would have occurred in such a storm as is not uncommon in the locality, the fact that on the occasion of the injury there was some more rainfall and a larger volume of water than usual, would not excuse the city from responsibility.

4. SAME—EVIDENCE—ADMISSIBILITY.

In an action against a city for damages resultant from failure to enlarge a culvert sufficiently to carry additional waters brought to the stream by the city's system of storm sewers and other improvements, evidence of the filling in of a portion of an old mill race lying parallel to the stream, a part of which was done by the city, resulting in turning its current back into the stream, and of the system of storm sewers and of their effect in increasing the demands upon the culvert, were admissible, not as substantive grounds for an action of negligence, but as bearing upon the question of what was a reasonable culvert.

5. SAME—INADEQUATE CULVERT—LIABILITY OF CITY.

Where, after a culvert was constructed, a city, by means of a system of storm sewers and other drainage improvements, none of which was unlawful, brought to the culvert more water than it was able to care for in ordinary stages of high water such as the city was bound to anticipate, it was as much the duty of the city to enlarge the culvert as though the increase of flowage had been in excess of authority, and the city, failing to enlarge the culvert, was liable for the resultant damages.

6. TRIAL—CONDUCT—REMARKS OF COURT—PREJUDICE.

After stating that a witness had answered a question propounded on cross-examination, and being assured that he had not, the court directed counsel to try it again, whereupon counsel withdrew the question and noted an exception to the remark of the court; the court then said: "If there is any doubt about it, about my being correct, you had better correct it now. That is my remembrance of it. I have no doubt the witness said about half an hour; if you have, and the jury have, you had better decide that." *Held*, that no discourtesy to counsel or anything indicating a purpose to unduly hamper counsel in the examination of the witness appeared.

7. MUNICIPAL CORPORATIONS — TORTS — INADEQUATE CULVERT — ACTION—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.

In an action against a city for damages arising from failure to

provide a sufficient culvert to carry the waters of a creek under a highway, it being claimed in defense that the storm causing the injury was unusual and extraordinary; photographs of the river of which the creek was a tributary, taken at a point above the mouth of the creek, were not of such materiality as to make their exclusion from evidence erroneous, the river taking its rise many miles away, and having various tributaries running into it upon which it depended wholly for increase in its volume of water.

Error to Washtenaw; Kinne, J. Submitted January 22, 1908. (Docket No. 27.) Decided March 31, 1908.

Case by Henry Richards against the city of Ann Arbor for the flooding of plaintiff's premises. There was judgment for plaintiff, and defendant brings error. Affirmed.

*J. W. Dwyer* (*E. B. Norris*, of counsel), for appellant.

*J. F. Lawrence* and *Arthur Brown* (*M. J. Cavanaugh*, of counsel), for appellee.

MONTGOMERY, J. This is an action on the case, in which the plaintiff recovered for damages done to his property, real and personal, on the occasion of a rain storm which occurred in the afternoon of the 7th day of July, 1902. The claim of the plaintiff was that the defendant city, in the construction and completion of its system of storm sewers, had taken surface water to Allen's creek which would not otherwise reach the creek, and that by such system of storm sewers had greatly accelerated the flow of surface water within the drainage area into the creek, and that the defendant, having acquired the flowage right of the Ann Arbor Milling Co. in what is called "the old mill race," had diverted the surface water of the mill race to Allen's creek, and that the defendant had neglected to enlarge the culvert over Miller avenue to an extent sufficient to safely carry the additional waters of the creek, and that the damage to plaintiff's property was occasioned thereby.

The defendant contended that no enlargement of the

152 MICH.—2.

drainage area of Allen's creek had been made by the storm-sewer system; that the defendant city had the right to accelerate the flow of surface water; that none of the waters of the old race could have been present at a point where they could do any damage to plaintiff's property; and that the storm in question was unusual and extraordinary, and such a storm as the defendant city had no reason to expect, and which the city was under no legal obligation to provide for.

Allen's creek is a watercourse extending from the southerly portion of the city of Ann Arbor nearly across the limits of the city, with an outlet into Huron river. It has three branches of considerable importance and other smaller ones which unite at a point a short distance south of Miller avenue. At a point south of Miller avenue is the beginning of the old mill race, so-called, which had been in existence for many years, and which had been continued in use up to the year 1900. Sometime in the month of May, 1900, the tunnel which formed a part of the mill race and extended under North Main street gave out, and it was not possible to make use of the water power without considerable repairs, and much fault having been found with the sanitary condition of this old mill race, the proprietors made an arrangement with one Hiscock and the city whereby they conveyed their right of flowage and ceased longer to use the water of the race for any purpose. Shortly after receiving this conveyance, Mr. Hiscock went on his land and filled in his old race up to the north line of Summit street, and in the month of October, 1900, Summit street being in need of repairs, the street commissioner filled in the old race in Summit street from Hiscock's fill to the south line of Summit street, and at about the same time took down the small dam near plaintiff's land, thus turning all the water of Allen's creek into its original channel except such as stood in that portion of the mill race not filled in.

The plaintiff's property which was injured was bounded on the north by Miller avenue, on the east and south by

Allen's creek, and on the west by the Ann Arbor Rail-road Company's right of way and embankment. The railroad embankment between Huron street and Miller avenue was constructed at a height of approximately seven feet and was an ordinary railroad embankment constructed of earth.

The storm sewers had been constructed in 1898 and 1899 and the Hill street sewer, which it is claimed brought to the creek water which theretofore had not reached it, was built in 1899. At Miller avenue was constructed a culvert the exact size of which was a matter of dispute. The defendant claimed it had a capacity of 56 square feet, while the plaintiff claimed it was 40 square feet or less, and the testimony showed that the railroad culvert, a short distance south of this, was $45\frac{1}{2}$ square feet.

On the day of the injury to plaintiff's property, the storm that raged was unquestionably very severe, and the rainfall unusual, although perhaps not unprecedented. The evidence of the plaintiff tends to show that Allen's creek south of the plaintiff's premises filled up rapidly; that the culvert at Miller avenue was wholly inadequate to carry off the water which came down; that as the volume of water increased, it carried away not only the plaintiff's buildings but the culvert as well. The theory of the plaintiff was that the water flowing into the old mill race from certain ravines and natural drainage courses below Miller avenue and being shut off at Summit street, increased to such volume as to cause the waters to back up and flow south and unite with the waters coming down Allen's creek and increasing the volume materially.

It appeared by the testimony of the plaintiff that for a period of a year or more he had been making complaint to the city authorities of the inadequacy of the culvert at Miller avenue. This was shown by testimony of various witnesses, including the city engineer. In fact the authorities went so far as to cause an estimate to be made by the city engineer of the expense of increasing the capacity of the Miller avenue and other culverts on the creek. This

action took place as early as April 15, 1901, and a report was made thereon, but no change was made in the culvert.

At the close of the testimony defendant asked that the verdict be instructed in its favor on the ground that it appeared by the undisputed testimony that this storm was so extraordinary in its character that it was not the duty of the defendant to anticipate it, and that the injury to the plaintiff's property was caused by the act of God.

We think there was no error in refusing to give this instruction. It could not appear conclusively from any evidence in the case that had the provision for taking care of the water that might reasonably be expected to come to this creek been made, the accident to the plaintiff's property would have happened. There was evidence on the part of one of the witnesses who attempted to keep the culvert clear tending to show that the water came down more rapidly than the culvert could care for it, and that it was a considerable period of time before it reached the level of the highway. The jury might well have drawn the inference that if provision had been made by an ample culvert to carry off this water, the accident would not have happened. At least it was open to the jury to find that the failure to provide adequate outlet was a concurring cause of the injury.

It was conceded by counsel for the plaintiff that the storm was unusual and extraordinary, and it is contended that the court was in error because it failed to characterize the storm as unusual and extraordinary in the instructions given to the jury. This contention is most remarkable, in view of the fact that in the defendant's 5th request, which was given with a modification not at all affecting the sense of the request, in the 6th request, and again in request 6a, both of which were given, the latter with a necessary modification, it was assumed that the question was a question for a jury, as to whether this storm was of such an extraordinary character that the city was not bound in the exercise of ordinary care and foresight to provide means for taking care of the water,

but in the 7th request, which was not given, it was asked that the question be distinctly left to the jury as to whether the storm was unusual and extraordinary. That request was as follows:

"If you find that the storm of the 7th of July, 1902, at Miller avenue aforesaid, being the locality in question, was unusual and extraordinary; that is to say, if an unusual and extraordinary quantity of rainfall was then and there precipitated in the watershed of Allen's creek, and coming to the culvert thereat, then you are directed that the defendant city would not be responsible for the damages occasioned thereby, and your verdict should be for the defendant."

In view of this, it is most remarkable that counsel should allege error and complain that the circuit judge did not, in disregard of their preferred request, declare the question to be not one of fact but one of law for the court.

The circuit judge, at the request of the defendant, gave the jury the following instruction:

"If you should find that the culvert at Miller avenue was not of sufficient capacity to carry and discharge all of the water of Allen's creek, even in ordinary high water, and if you further find that the storm of the day in question was unusual and extraordinary; that the damage which occurred would have come in consequence of the storm, even if the culvert had been of sufficient capacity to carry and discharge at all times all of the water in times of unusual high water, then you are directed to return a verdict for defendant.

"If the defendant city's negligence concurred as a fact in causing the damage complained of, its liability depends upon whether it contributed as a proximate or remote cause. If you shall find that defendant city's negligence was merely the remote cause it will not be liable although it may have contributed in some degree in producing the damage."

We think these two last requests were sufficiently favorable to the defendant. If as a matter of fact the culvert in question was so inadequate that it could not take care of such water as would come to it in case of an ordinary storm which might reasonably be expected and an-

ticipated by the authorities, and the injury to this property would have occurred in such a storm as is not uncommon in this region, the fact that on this occasion there was some more rainfall and a larger volume of water should not and would not excuse the city from responsibility. See *Brash* v. *City of St. Louis*, 161 Mo. 433; 1 Thompson on Negligence, § 23; *Wald* v. *Railroad Co.*, 162 Ill. 545 (35 L. R. A. 356). This was evidently the view upon which the case was submitted by the circuit judge.

Complaint is also made in the brief of the fact that the jury were permitted to consider the claim of the plaintiff that the water in the mill race backed up so as to flow south and thus increase the demands of the Miller avenue culvert. It is claimed that the testimony fails to show this to be the fact. But we think there was testimony given in the case which if credited by the jury did tend to show that the water was forced back in this mill race and found its way into the creek above plaintiff's property. This was a competent fact to be shown, not as a substantive ground for an action of negligence possibly, but as a fact of which the city must have had knowledge, as it joined with Hiscock in filling in the mill race from the point where it crossed Summit street, and must have known the natural effect of this act, and that if the water backed up it would make increased demands upon the culvert at Miller avenue.

The same thing may be said of the testimony upon the subject of drainage. If the drainage by the storm sewers increased the water in the creek so that the demand upon the culvert was correspondingly increased, this was a competent fact without regard to the question of whether the increase in flowage was per se negligent. Both of these facts bore upon the question of what was a reasonable culvert. A careful reading of the charge of the circuit judge, which consists in a very large part of instructions requested by the defendant, leads to the conclusion that this was precisely the view which he sought to convey to

the jury and which we think he did impart. At the request of the defendant he charged the jury that "the storm sewers constructed by the defendant city and referred to in the evidence are each and all of them lawful structures." True he refused to give an instruction as follows:

"You are further instructed if you should find that the surface water, or rain falling in the streets and on buildings situate in defendant city, and within that portion thereof within the watershed of Allen's creek and by the storm sewers was accelerated in its flow and thereby reached the watercourse called Allen's creek sooner and in a shorter time than it would otherwise have done, still the defendant city is wholly without responsibility on account thereof."

The giving of the one instruction and refusing the other is undoubtedly accounted for by the fact that he had previously instructed the jury in substance that if the concurrence of the various acts which were shown on behalf of the city with an extraordinary flow caused the damage to the plaintiff the plaintiff could recover. He had instructed the jury in his general charge as follows:

"If from the evidence you find that the storm of July 7, 1902, was one of extraordinary violence, in the nature of a cloudburst or something akin thereto, that it caused such a rush of waters into and along the course of Allen's creek that no ordinary prudence or foresight on the part of the city could be expected to guard against it, that the destruction it worked upon the premises of the plaintiff was independent of any other concurring causes, if you so find the facts from the evidence in this cause, then the city is not liable in this action and your verdict should be for the defendant.

"If, however, you find from the evidence that there were concurring or contributing causes, that through the system of storm sewers waters were conveyed into Allen's creek which were not within the natural drainage of said creek; that the waters which had previously passed into the mill race were turned south and passed into Allen's creek south of the land of the plaintiff, and that the culvert at Miller avenue was thereby rendered insufficient to carry off the waters of Allen's creek in times of ordinary high water, and that the city had been cognizant of this

fact for some months, and if you further find from the evidence that these causes and conditions concurred and contributed to the destruction of the plaintiff's property, and that without such concurrence no damage could have been sustained by the plaintiff, then the plaintiff would be entitled to your verdict.

"There is no doubt of the authority of the city to establish a system of drainage for the benefit of the streets and the public, and it cannot be said that it must be sufficient for every possible emergency, but the city is required to use due caution, and if through its negligence in not providing reasonably efficacious means to take care of the water that it should reasonably expect to accumulate by reason of its sewer and other sources a liability would be incurred.

"In this case the city thoroughly disputes the claim that its system of storm sewers conveys any water into Allen's creek out and beyond the area of the natural drainage thereof. That is the claim on the part of the city.

"It must be hoped and expected that improvements will be made within the boundaries of a city. Streets may be graded and paved, their level may be changed and thereby the natural flowage of the surface water may also be changed, and the creation of storm sewers in the improved districts of localities may cause the surface water therein to flow more rapidly and in larger quantity towards and into their natural drain, and in this case the improvements in the sixth and seventh wards of this city may have caused the surface water flowing through the storm sewers into Allen's creek to be increased in velocity and quantity, but such is the right of the city, and no one can complain thereof so long as the natural area of drainage is not enlarged.

"If you find from the evidence that the culvert at Miller avenue was sufficient to receive and discharge all waters that passed into and along Allen's creek in times of ordinary high water then the city has done its entire duty in the premises and the plaintiff cannot recover in this action. If, however, the system of storm sewers caused water to flow into Allen's creek from lands of which Allen's creek was not the natural drainage, and such increased flowage proved to be beyond the capacity of the Miller avenue culvert in times of ordinary high water, then it would be the duty of the city to meet this demand and enlarge the

culvert correspondingly, and its negligence in so doing, if it caused or contributed to the damage or injury to persons or property, would create a liability on the part of the city.

"It appears that north of Miller avenue there is a considerable tract of territory whose natural drainage would be Allen's creek, it appears that for many years prior to 1902 this territory had drained into a certain private mill race, that some time prior to the 7th day of July, 1902, this mill race had ceased to be used as a mill race, and the flow of water therein had been obstructed. It is the claim of the plaintiff that through the action of the city in filling up Summit street the flowage was held back and thereby the water which previously had drained into the mill race was turned south and thus driven back across Miller avenue and into Allen's creek south of the plaintiff's land. This contention on the part of the plaintiff is wholly denied by the defendant, and the city insists that the action of the city in the filling up of Summit street had no effect whatever upon this flowage of water.

"If from the evidence in this case you find that this claim on the part of the plaintiff is sustained and established, and that thereby the water drainage into Allen's creek was increased so that the capacity of the culvert at Miller avenue in times of ordinary high water was rendered inadequate to the demands upon it, then the city would be guilty of negligence in not enlarging the culvert so as to meet this exigency, and if you find from the evidence in this case that this condition of affairs caused or contributed to the destruction of July 7, 1902, then the city would be liable therefor.

"If you find from the evidence that the water which previously drained into the mill race in point of fact did not run south or was not driven south across Miller avenue and into Allen's creek, but found its way into Allen's creek north of Miller avenue, then this contention on the part of the plaintiff must fall to the ground."

It is manifest that as an essential to a recovery in any case the jury must have found the inadequacy of the culvert at Miller avenue to take care of the waters which were conveyed to it in ordinary stages of high water such as the city was bound to anticipate. The fact that after the culvert had been constructed the changes in the storm-sewer system had resulted in bringing more water there,

would make as imperative an enlargement of the culvert if the water was otherwise rightly brought there as if the flowage was in excess of authority. We are satisfied that the gist of the plaintiff's action is the inadequacy of the culvert, but this depended upon other acts of the city, lawful or unlawful,—and as to the drainage system the jury were told they were lawful,—in fixing the quantity of water which they saw fit to attempt to force through the outlet. We do not think recovery could have been had upon any other theory, and, so construed, we think the instructions correct and not out of harmony with *A. L. Lakey Co.* v. *City of Kalamazoo*, 138 Mich. 644 (67 L. R. A. 931). We think we have said all that need be said on the subject of the charge.

The objections to the argument by counsel have been fully considered, but we think nothing occurred at the trial that calls for a reversal of the case upon this ground.

Considerable intemperate discussion is devoted to a statement of the trial court that a certain witness had answered a question which was propounded on cross-examination, but on being assured such answer had not been given, the court directed counsel to try it again, whereupon counsel withdrew the question and noted an exception to the remark of the court. The court very promptly said:

"If there is any doubt about it, about my being correct, you had better correct it now. That is my remembrance of it. I have no doubt the witness said about half an hour; if you have, and the jury have, you had better decide that."

We fail to discover in anything the court said on this occasion any discourtesy to counsel or anything indicating a purpose on the part of the court to unduly hamper counsel in the examination of the witness. The intemperate language of counsel in discussing this question in the brief is worthy of the severest condemnation. It is absolutely without justification so far as we are able to discover.

Defendant offered in evidence certain photographs showing the appearance of Huron river at points above the inlet of Allen's creek, and these were excluded, and error is assigned upon that ruling.  We think that no error was committed.  The volume of the water in Allen's creek was the question in controversy.  While general testimony as to flood conditions was competent, the appearance of a stream which was shown to have taken its rise many miles away, and to have various tributaries running into it and depending wholly upon them for increasing the volume of water, had no such direct tendency to show the condition of Allen's creek as to make its exclusion error, especially as the condition of Allen's creek was so clearly shown.

We think the defendant had a fair trial, and there was testimony which justified the jury in finding the verdict which was returned.

The judgment is affirmed.

GRANT, C. J., and OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.