KERNEN v HOMESTEAD DEVELOPMENT COMPANY

Docket No. 205879. Submitted September 1, 1998, at Detroit. Decided
November 17, 1998, at 9:05 A.M. Leave to appeal sought.

Lloyd and Donna Kernen brought an action in the Oakland Circuit
Court against Homestead Development Company, alleging that the
defendant's proposed discharge of treated wastewater into a wet-
land on its property would flow into a wetland located on the plain-
tiffs' adjoining property and thereby constitute a trespass, a nui-
sance, and a violation of the Michigan Environmental Protection
Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*, now part
of the Natural Resources and Environmental Protection Act
(NREPA), MCL 324.1701 *et seq.*; MSA 13A.1701 *et seq.* The plaintiffs
sought injunctive relief, future damages, and a reversal of the deci-
sion of the Department of Natural Resources, now the Department
of Environmental Quality, to grant the defendant a permit under
the National Pollution Discharge Elimination System (NPDES), 33
USC 1342, allowing the discharge of treated sewage. On cross-
motions for summary disposition, the court, Joan E. Young, J.,
granted partial summary disposition for the plaintiffs with respect
to the trespass claim, denying the request for injunctive relief and
awarding nominal damages of $1. The court granted summary dis-
position for the defendant with respect to the nuisance and MEPA
claims, affirmed the decision of the DNR to issue an NPDES permit to
the defendant, and apportioned costs. The plaintiffs appealed the
denial of a permanent injunction and the apportionment of costs,
and the defendant cross appealed the grant of summary disposition
to the plaintiffs with regard to their trespass claim.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition to the
plaintiffs with regard to their anticipatory trespass claim. Because
the trespass alleged by the plaintiffs was merely anticipatory, they
had no cause of action for trespass on which summary disposition
could have been granted. While an injunction may lie when a tort is
merely threatened, a cause of action for damages will not. The trial
court should have considered the plaintiffs' anticipatory trespass

claim only in the context of their request for injunctive relief. The trial court's grant of partial summary disposition for the plaintiffs was in error and must be reversed.

2. The trial court did not err in balancing the relative equities between the parties and in denying the requested injunction. Other than general claims that the value of their property will be lowered in the eyes of prospective purchasers and that they have a basic right to its exclusive use and possession, the plaintiffs presented no evidence that they will suffer any specific, let alone irreparable, harm to their property such that an injunction should have been issued.

3. The trial court erred in awarding damages because any claim for damages is premature inasmuch as the defendant has yet to discharge treated sewage.

4. The issue concerning the apportionment of costs is rendered moot by the reversal of the grant of partial summary disposition to the plaintiffs.

Affirmed in part and reversed in part.

1. TORTS — THREATENED TORTS — INJUNCTIONS — CAUSES OF ACTION.

An injunction may lie when a tort is merely threatened, but a cause of action for damages will not.

2. INJUNCTIONS — DISCRETIONARY RELIEF.

Injunctive relief is an extraordinary remedy that is issued at the discretion of a trial court and only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury.

3. INJUNCTIONS — FACTORS.

Factors considered in determining the propriety of issuing an injunction include the nature of the interest to be protected, the relative adequacy to the plaintiff of injunction and of other remedies, any unreasonable delay by the plaintiff in bringing suit, any related misconduct on the part of the plaintiff, the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied, the interests of third persons and of the public, and the practicability of framing and enforcing the order or judgment.

*Rentrop, Vanderkloot, Haynes & Morrison, P.C.* (by *Jeffrey K. Haynes* and *C. Thomas Ludden*), for the plaintiffs.

*Winter, PLC* (by *Stephen D. Winter* and *Ann Marie Uetz*), for the defendant.

Before: TALBOT, P.J., and FITZGERALD and YOUNG, JR., JJ.

YOUNG, JR., J. Plaintiffs appeal as of right an order denying their request for a permanent injunction that would prohibit defendant from discharging treated wastewater into a wetland on its property, which wastewater would then flow south into a wetland located on plaintiffs' property. Plaintiffs also appeal the trial court's decision to apportion costs. Defendant cross appeals the trial court's grant of summary disposition to plaintiffs with regard to their claim that the proposed discharge would constitute a trespass. We affirm in part and reverse in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. INTRODUCTION

Plaintiffs and defendant own adjoining parcels of land in Holly Township that are divided by East Holly Road. Plaintiffs' parcel, located south of the road, consists of fifty-four acres, twenty-five of which are covered by a wetland (the "Lacey Lake north wetland").[1] Defendant's property is situated north of East Holly Road. Defendant's property also contains a wetland (the "Miner wetland") that is connected to plaintiffs' wetland to the south via a culvert that passes under East Holly Road. Natural accumulations of water (characterized by plaintiffs as "sheet flow") drain from defendant's property to plaintiffs' property

---

[1] Plaintiffs also own a second parcel that is not at issue here.

to the adjacent Lacey Lake, which is part of the Shiawassee River. The Shiawassee River, in turn, eventually flows into Lake Huron. Plaintiffs do not own all of the Lacey Lake north wetland; the wetland extends further south past their property to Lacey Lake itself.

### B. DEFENDANT'S SEWAGE TREATMENT PLAN

Defendant planned to develop its property into a manufactured-home community and sought permission to connect its proposed development to the Village of Holly's municipal wastewater treatment system. After that request was denied, defendant successfully obtained a permit from the Michigan Department of Natural Resources (DNR) allowing defendant to discharge treated sewage into its Miner wetland.[2] As a consequence, such discharged treated sewage would flow south through the Miner wetland to the culvert under East Holly Road into plaintiff's Lacey Lake north wetland, and from there into adjacent Lacey Lake.

Defendant's permit was issued pursuant to the National Pollution Discharge Elimination System (NPDES), established under 33 USC 1342. The NPDES is part of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act, 33 USC 1251 *et seq.* Under the water resources protection provisions of Michigan's Natural Resources and Environmental Protection Act (NREPA), MCL 324.3101 *et seq.*; MSA 13A.3101 *et seq.*, the DNR (now the Depart-

---

[2] It is undisputed that, under the permit the DNR issued, defendant would be allowed to discharge up to 166,000 gallons of effluent a day.

ment of Environmental Quality [DEQ]) is responsible for issuing NPDES permits in Michigan and ensuring that those permits comply with applicable federal law and regulations. See Michigan Environmental Law Deskbook, vol 1, § 4.3, p 4-4. Indeed, permits issued by the DNR are subject to review by the federal Environmental Protection Agency. See 33 USC 1342(b).

### C. PROCEEDINGS BELOW

Plaintiffs initially challenged defendant's permit in administrative proceedings before the DNR. In addition to challenging the permit on the ground that it failed to comply with the requirements of the various water pollution statutes, plaintiffs also challenged the permit on the ground that it authorized an illegal trespass over plaintiffs' property. Plaintiffs' administrative challenges were dismissed, and the issuance of the permit was upheld. Significantly, the DNR held that the trespass claim fell outside its jurisdiction and constituted a private matter between the parties.

Before development could begin, plaintiffs filed suit against defendant in the Oakland Circuit Court, alleging that the planned discharge of treated sewage would constitute a trespass, a nuisance, and a violation of the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* (the provisions of which are now contained in Article I, Part 17 of the NREPA, MCL 324.1701 *et seq.*; MSA 13A.1701 *et seq.*)  Plaintiffs sought both injunctive relief and future damages. Plaintiffs also asked the trial court to reverse the DNR's decision granting the NPDES permit to defendant.

Following cross-motions for summary disposition, the trial court granted partial summary disposition to plaintiffs on their trespass claim, but granted summary disposition with regard to defendant on plaintiffs' nuisance and MEPA claims.[3] The trial court also affirmed the DNR's decision to issue the NPDES permit.[4] The court subsequently denied defendant's motions for reconsideration and relief from judgment. Following a hearing, the trial court denied plaintiffs' request for injunctive relief and awarded nominal damages of $1 on plaintiffs' trespass claim. In so doing, the court balanced the equities involved and determined that plaintiffs failed to show harm sufficient to warrant an injunction. Finally, the court apportioned costs among the parties to reflect the fact that plaintiffs prevailed on their trespass claim, while defendant prevailed on the nuisance and MEPA claims, as well as on plaintiffs' request for injunctive relief. See MCR 2.625(B).

## II. ANALYSIS

### A. DEFENDANT'S CROSS APPEAL

We first address defendant's cross appeal, in which it is contended that the trial court erred in granting

---

[3] Plaintiffs do not appeal the dismissal of their nuisance and MEPA claims.

[4] Plaintiffs have not appealed the trial court's decision affirming the DNR's issuance of the NPDES permit. The clean water regulations at issue here apparently are sufficiently stringent that the treated discharge permitted is subject to the "near drinking water standard" and thus should not be harmful if consumed. Consequently, on appeal, plaintiffs focus not on the fact that the anticipated treated sewage will be actually harmful in an environmental sense, but on the *perceived* harm that disclosure of the fact that treated sewage flows through their property will have on the value of their property.

summary disposition to plaintiffs with regard to their anticipatory trespass claim. We agree, but for entirely different reasons than those advanced by defendant.

Because the trespass alleged by plaintiffs was merely *anticipatory*, plaintiffs had no cause of action for trespass for which summary disposition could have been granted. While an injunction may lie when a tort is merely threatened, see *Adkins v Thomas Solvent Co*, 440 Mich 293, 315; 487 NW2d 715 (1992), a cause of action for damages will not. See *Davidson v Bugbee*, 227 Mich App 264, 269; 575 NW2d 574 (1997) ("A cause of action accrues when all the elements of the claim have occurred and can be alleged in a proper complaint"). Thus, the trial court should have considered plaintiffs' anticipatory trespass claim only in the context of their request for injunctive relief. Any claim for actual trespass was premature. Therefore, the trial court's order granting partial summary disposition to plaintiffs was erroneous and must be reversed.

### B. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs essentially maintain that the trial court erred in balancing the relative equities between the parties and in failing to enjoin the proposed discharge. We find no error.

"Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992). Granting injunctive relief is within the sound discretion of the trial court. *Holland v Miller*, 325

Mich 604, 611; 39 NW2d 87 (1949); *Jeffrey, supra* at 263. We review the trial court's decision for an abuse of discretion. *Holly Twp v Holly Disposal, Inc*, 440 Mich 891 (1992); *Seifert v Buhl Optical Co*, 276 Mich 692, 699; 268 NW 784 (1936).

At the outset, we note that both parties make various arguments regarding the legal right, if any, of defendant to make the proposed discharge. Plaintiffs' position essentially is that *any* increase in the flow of surface water onto their property, regardless of its cleanliness, will constitute an invasion of their private property rights warranting an injunction. Defendant, on the other hand, maintains that, because the discharge is authorized by the DNR and the Lacey Lake north wetland is subject to regulation under the applicable clean water acts, plaintiffs have no right to object. Defendant also argues that the Lacey Lake north wetland is part of a natural watercourse and that defendant has the right as a riparian owner to increase the flow of water between the properties even if it is to plaintiffs' detriment. Finally, defendant argues that, even if the discharge constitutes a technical trespass, plaintiffs are not entitled to an injunction because the equities favor defendant.

We reject as unfounded defendant's claim that there can be no trespass because the Lacey Lake north wetland is subject to regulation by the DNR under the Clean Water Act and the water resources protection provisions of the NREPA, MCL 324.3101 *et seq.*; MSA 13A.3101 *et seq.*, and that defendant is "authorized" by the NPDES permit to discharge treated sewage into it. Defendant fails to cite any particular provision of the relevant statutes or any other authority for its

apparent belief that these statutes somehow preempt the common-law rights of the owner of a lower estate. Nor are we persuaded by defendant's argument that plaintiffs cannot object to the discharge because they do not "own" the water flowing through the wetland. For the reasons stated below, we also reject plaintiffs' argument that, because the part of the Lacey Lake north wetland located on their property is "private property," is not "navigable," and has not been "impressed with the public trust," defendant has no right to "enter" it by way of the proposed discharge.

Defendant's right, if any, to discharge treated wastewater into the Lacey Lake north wetland depends on the answer to the following question: Is the Lacey Lake north wetland part of a natural "watercourse,"[5] such that the rules regarding the rights of riparian[6] owners apply, or is this case governed by the rules relating to the flow of "surface water"[7] between adjoining properties? If the water flow can be charac-

---

[5] Our Supreme Court has defined a "watercourse" as "'[a] natural stream of water fed from permanent or periodical natural sources and usually flowing in a particular direction in a defined channel, having a bed and banks or sides, and usually discharging itself into some other stream or body of water.'" *Grand Rapids & I R Co v Round*, 220 Mich 475, 478; 190 NW 248 (1922), quoting Black's Law Dictionary (2d ed).

[6] "Land which includes or is bounded by a natural watercourse is defined as riparian." *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1985).

[7] "Surface waters" are defined as "waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." *Fenmode, Inc v Aetna Casualty & Surety Co*, 303 Mich 188, 192; 6 NW2d 479 (1942). Such waters are lost by percolation, evaporation, or by reaching some definite watercourse or substantial body of water into which they flow. *Id.*

terized as a natural watercourse to which defendant has riparian rights, then defendant may make "reasonable use" of it. *People v Hulbert*, 131 Mich 156; 91 NW 211 (1902); *Thies v Howland*, 424 Mich 282, 288, n 3; 380 NW2d 463 (1985); *White Lake Improvement Ass'n v Whitehall*, 22 Mich App 262, 272, n 11; 177 NW2d 473 (1970). However, even if riparian rules apply, defendant cannot pollute the water, see *Dohany v Birmingham*, 301 Mich 30; 2 NW2d 907 (1942); *Attorney General ex rel Wyoming Twp v Grand Rapids*, 175 Mich 503; 141 NW 890 (1913), or unreasonably increase the flow to the extent that it floods plaintiffs' property. Cf. *Richards v Ann Arbor*, 152 Mich 15; 115 NW 1047 (1908); see also generally anno: *Right to drain surface water into natural watercourse*, 28 ALR 1262; 78 Am Jur 2d, Waters, § 13, pp 458-459, §§ 132-133, pp 580- 582.

On the other hand, if the law relating to the flow and disposition of surface waters applies, then the proposed discharge would arguably constitute at least a technical trespass. Under Michigan law, the owner of a lower or servient estate "must receive the surface water from the upper or dominant estate in its natural flow." *Bennett v Eaton Co*, 340 Mich 330, 335-336; 65 NW2d 794 (1954). However, it is equally clear that the owner of the upper estate has no right to increase the amount of water that would otherwise naturally flow onto the lower estate. *Id.* at 336-337; see also *Allen v Morris Bldg Co*, 360 Mich 214, 217; 103 NW2d 491 (1960); *Schmidt v Eger*, 94 Mich App 728, 738;

289 NW2d 851 (1980); *Lewallen v City of Niles*, 86 Mich App 332, 334; 272 NW2d 350 (1978).[8]

The problem in this case is that the precise character of the water flow between plaintiffs' and defendant's properties was never really litigated below. Indeed, defendant did not raise this issue until its motion for reconsideration of the trial court's grant of partial summary disposition to plaintiffs. Certainly, the trial court never ruled on the issue.[9] However, the resolution of this issue is not necessary for purposes of deciding whether the trial court correctly declined to issue an injunction. Even assuming that the Lacey Lake north wetland is *not* part of a natural watercourse, that it merely serves as an outlet for the periodic draining of natural surface waters accumulating on defendant's property, and that defendant therefore has no right to increase the flow of such water onto

---

[8] The distinction between natural watercourses and outlets for the flow of surface waters was alluded to in *Gregory v Bush*, 64 Mich 37; 31 NW 90 (1887), where the Court stated:

We do not think this ravine can be termed a natural watercourse. It is simply an outlet for surface water at certain seasons of the year. It has no defined bed or channel, with banks and sides. . . . It is therefore not governed by the well-settled rules applying to natural streams. No right can be claimed by defendant to run this water upon the land of complainant . . . because it is a water-course. He must therefore be governed by the law relating to the flow and disposition of surface water . . . . [*Id.* at 41.]

[9] We further note that, while the legal rules for determining what constitutes a "watercourse" as opposed to the natural flow of "surface waters" are well-defined, this is a determination that depends heavily on the facts of a given case. Compare *Hilliker v Coleman*, 73 Mich 170; 41 NW 219 (1889), and *Rummell v Lamb*, 100 Mich 424; 59 NW 167 (1894), with *Gregory v Bush*, 64 Mich 37; 31 NW 90 (1887).

plaintiffs' property, it is clear that plaintiffs failed to establish a right to injunctive relief at this time.

Citing *Kratze v Independent Order of Oddfellows*, 442 Mich 136, 145; 500 NW2d 115 (1993), plaintiffs argue that the trial court erred in applying a balancing test. However, even were we to assume that the proposed discharge would constitute a technical trespass, as the trial court noted, the *Kratze* Court held only that a court "is *not bound* to engage in a balancing of the relative hardships and equities if the encroachment resulted from an intentional or willful act." *Id.* (emphasis added). We are not persuaded that the trial court erred in balancing the equities in this case. The general rule, as stated in *Kratze*, is that " 'the court will balance the benefit of an injunction to plaintiff against the inconvenience and damage to defendant, and grant an injunction or award damages as seems most consistent with justice and equity under all the circumstances of the case.' " *Id.* at 143, n 7, citing *Hasselbring v Koepke*, 263 Mich 466, 480; 248 NW 869 (1933); see also *Monroe Carp Pond Co v River Raisin Paper Co*, 240 Mich 279; 215 NW 325 (1927) (upholding denial of an injunction even though the plaintiff, a lower riparian owner, suffered compensable damages as a result of the defendant's pollution of a stream). Moreover, 4 Restatement Torts, 2d, §936, pp 565-566, cited with approval in *Kratze, supra* at 142, n 6, provides that the following factors be taken into account in determining the propriety of issuing an injunction:

    (a) the nature of the interest to be protected,

.(b) the relative adequacy to the plaintiff of injunction and of other remedies,

(c) any unreasonable delay by the plaintiff in bringing suit,

(d) any related misconduct on the part of the plaintiff,

(e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied,

(f) the interests of third persons and of the public, and

(g) the practicability of framing and enforcing the order or judgment.

As the trial court noted in its written opinion, the water cases that plaintiffs cite in support of their request for an injunction all involve a showing of harm. See, e.g., *Ruehs v Schantz*, 309 Mich 245; 15 NW2d 148 (1944); *Peacock v Stinchcomb*, 189 Mich 301; 155 NW 349 (1915); *Bruggink v Thomas*, 125 Mich 9; 83 NW 1019 (1900); *A P Cook Co v Beard*, 108 Mich 17; 65 NW 518 (1895). Here, other than general claims that the value of their property will be lowered in the eyes of prospective purchasers and that plaintiffs have a basic right to its exclusive use and possession, plaintiffs presented no evidence that they will suffer any specific, let alone irreparable, harm to their property.[10] Moreover, plaintiffs do not dispute the trial court's finding that the harm to defendant in granting the injunction would be considerable.

Finally, on its face, the statutory provision, MCL 600.2919; MSA 27A.2919, that plaintiffs cite in support of their argument that injunctive relief for continuing trespasses has been codified, applies only to specific

---

[10] Plaintiffs' expert never attempted to quantify the harm that plaintiffs perceived would flow from the fact that treated and presumably environmentally harmless sewage would be discharged onto their property.

types of damage to land not at issue. In sum, we cannot say that the trial court abused its discretion in denying plaintiffs' request for an injunction. Accordingly, we affirm the trial court's decision in that regard.

### C. DAMAGES

On the basis of its determination that plaintiffs' failed to show that any material harm would result from the proposed discharge, the trial court awarded nominal damages. However, as stated, *any* claim for damages is premature because defendant has not yet begun operating its proposed waste treatment facility. Therefore, the trial court erred in awarding even nominal damages to plaintiffs.[11]

### D. COSTS

Finally, plaintiffs argue that the trial court erred in apportioning costs. However, because we reverse the trial court's grant of partial summary disposition to plaintiffs, this issue is moot. See *Michigan Nat'l Bank v St Paul Fire & Marine Ins Co*, 223 Mich App 19, 21; 566 NW2d 7 (1997).

Affirmed in part and reversed in part.

---

[11] We do note that, in the event that the discharge of treated wastewater *does* commence and plaintiffs can show that they suffered harm as a result, nothing in this opinion should be construed as preventing plaintiffs from seeking another injunction or bringing a cause of action for damages.