*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BULLER,

        Plaintiff-Appellee,

v

TITAN INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2023

No. 360439
Oakland Circuit Court
LC No. 2021-191687-NF

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] an order granting plaintiff's motion for a preliminary injunction in this declaratory judgment action involving an insured who was catastrophically injured in a motor vehicle accident in 1994. On appeal, defendant argues that the trial court erred by granting plaintiff's motion for a preliminary injunction because (1) the 2019 amendments, 2019 PA 21, to the no-fault act, MCL 500.3101 *et seq.*, are constitutional and apply to claims for benefits accruing after the effective date of the amendments regardless of when the accident occurred or when the insurance policy was entered into; and (2) plaintiff failed to establish the elements required for a preliminary injunction. While this matter was pending, however, this Court rejected defendant's first argument in *Andary v USAA Cas Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487), lv gtd ___ Mich ___; 979 NW2d 823 (2022). Although our Supreme Court has granted leave to appeal in that matter, "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals." MCR 7.215(C)(2). Accordingly, defendant's first argument is without merit. Further, defendant's second argument is also without merit. Accordingly, we affirm.

---

[1] *Buller v Titan Ins Co*, unpublished order of the Court of Appeals, entered April 21, 2022 (Docket No. 360439).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was rendered a quadriplegic in a motor vehicle accident in 1994. The parties do not dispute the extent of plaintiff's injuries or plaintiff's need for 24-hour skilled attendant care. There is no dispute that plaintiff's accident and the policy under which plaintiff claims benefits for his injuries occurred before the 2019 amendments to the no-fault act. After some initial litigation following the accident, the parties signed a partial release in which the parties agreed to a payment schedule. Under this schedule, defendant would pay for plaintiff's attendant care: (a) $900 per day from April 21, 2006 to April 20, 2007; (b) $960 per day from April 21, 2007 to April 20, 2008; (c) $1,008 per day from April 21, 2008 to April 20, 2009; and (d) $1,068 per day from April 21, 2009 to April 20, 2010. There was no designation for any amount after April 20, 2010, but defendant continued to pay the $1,068 amount until July 1, 2021. On July 2, 2021, defendant reduced plaintiff's payments from an hourly rate of $44.50 to $25.48, or $622.52 per day. Defendant arrived at this number by reducing the $1,068 amount by 45%, and adding 4.11% back for inflation, as provided under the new fee schedule introduced by the 2019 amendments to the no-fault act, MCL 500.3157(7)(a)(*i*).

Plaintiff filed this lawsuit seeking a declaratory judgment that the 2019 no-fault amendments were unconstitutional or could not be applied retroactively, and requested a temporary restraining order (TRO) and preliminary injunction to maintain the status quo of attendant care no-fault benefits while this matter was pending. With regard to his request for a preliminary injunction, plaintiff argued that the four factors required for a preliminary injunction were satisfied. Plaintiff contended that he would suffer irreparable harm if his benefit payments were reduced because he would not be able to afford his care providers and he would die without attendant care. Plaintiff argued that his physical harm and death vastly outweighed the solely economic harm defendant could potentially suffer, and a preliminary injunction would promote the public interest by showing people their contractual insurance rights were enforceable. Further, plaintiff argued, he would succeed on the merits of his case because his benefit payments were a vested, contractual right which could not be altered by the amendments. And his payments were not subject to MCL 500.3157(7)(a)(*i*) since plaintiff's attendant care provider never affirmatively billed plaintiff or defendant for her services, meaning there were no "charges" from which defendant could reduce the amount under MCL 500.3157(7)(a)(*i*).

Defendant responded, arguing that plaintiff failed to show the requisite factors were satisfied to justify a preliminary injunction because plaintiff, at best, showed his anticipation of irreparable harm, but failed to show that his providers would actually quit if the payments were lowered. Further, defendant's harm outweighed plaintiff's because defendant would be required to act contrary to statutory law and was unlikely to ever recover the excess payments from plaintiff if the amendments were later enforced. Moreover, defendant argued, public policy supported denying a preliminary injunction because the no-fault amendments generated significant cost-savings which were dispersed to insureds through lowered premiums. Regarding plaintiff's likelihood of success on the merits, defendant argued that if the payment for plaintiff's attendant care services were not "charges" for such services, defendant would have no obligation to pay for any amount of the care. Furthermore, plaintiff's argument that he had a vested right under the Contracts Clause of the Michigan Constitution, Const 1963, art 1, § 10, was incorrect because personal injury protection (PIP) benefits are statutory benefits which could be altered by the

Legislature at will. After the parties reiterated their arguments during oral argument, the trial court granted plaintiff's motion for preliminary injunction. Defendant now appeals.

## II. ANALYSIS

Defendant first argues that the trial court erred by granting plaintiff's motion for a preliminary injunction because the clear statutory language of MCL 500.3157(7) mandates the reduction of payments for plaintiff's attendant care services after July 1, 2021. As stated above, however, we are bound by this Court's decision in *Andary* that the 2019 amendments do not apply retroactively to individuals whose injuries arose before their effective date; therefore, we disagree.

The 2019 amendments to the no-fault act resulted in a fee schedule for treatment payments under MCL 500.3157. The parties do not dispute that, if MCL 500.3157 applies, plaintiff's claims would fall under MCL 500.3157(7)(a)(*i*), which states:

> (7) If Medicare does not provide an amount payable for a treatment or rehabilitative occupational training under subsection (2), (3), (5), or (6), the physician, hospital, clinic, or other person that renders the treatment or training is not eligible for payment or reimbursement under this chapter of more than the following, as applicable:
>
> (a) For a person to which subsection (2) applies, the applicable following percentage of the amount payable for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:
>
> (*i*) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%. [MCL 500.3157(7)(a)(*i*).]

This Court in *Andary* considered near-identical facts and arguments, and held:

> In sum, the amended version of MCL 500.3157 contains no "clear, direct, and unequivocal," *Davis*[*v State Employees' Retirement Bd*], 272 Mich App [151,] 155; [725 NW2d 56 (2006)], expression of intent to have subsections (7) and (10) apply retroactively, i.e., to individuals who were injured before its effective date, even as to services provided after its effective date. Nor is such language found elsewhere in the amended no-fault act. MCL 500.2111f(8) is insufficient to overcome the presumption of retroactivity when it is located in a separate chapter of the insurance code and does not directly call for retroactive application. Further, retroactive application would alter the injured plaintiffs' settled rights and expectations under the pre-amendment no-fault act, which were obtained in exchange for premiums based on defendants' obligation to pay all reasonable charges not subject to fee schedules or caps.

* * *

## B. CONTRACTS CLAUSE

Even if we were to conclude that the Legislature intended for 2019 PA 21 to apply retroactively to those injured before the amendments' effective date, we would nonetheless hold that retroactive application violates the Contracts Clause of the Michigan Constitution. [*Andary*, ___ Mich App at ___; slip op at 11.]

Accordingly, the 2019 amendments do not apply retroactively to individuals whose injuries arose before their effective date, "even as to services provided after [their] effective date." *Id.* Plaintiff's injury occurred in 1994, well before the 2019 amendments came into effect. The policy under which defendant now provides coverage was entered into before the amendments as well. Because this Court determined that there was no intent for retroactivity of the amendments, and held, regardless, "retroactive application violates the Contracts Clause of the Michigan Constitution[,]" *id.*, the amendments and their fee schedules are inapplicable to plaintiff's benefits for his 1994 injury.

Next, defendant argues that plaintiff did not satisfy his burden to justify the trial court's issuance of the preliminary injunction. We disagree. A trial court's decision to grant injunctive relief is reviewed for an abuse of discretion, which occurs when the decision falls outside the range of reasonable and principled outcomes. *Mich Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 262; 964 NW2d 816 (2020) (citation omitted).

"Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998) (quotation marks and citation omitted). "Granting injunctive relief is within the sound discretion of the trial court." *Id.* "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of the House of Representatives*, 297 Mich App 641, 647-648; 825 NW2d 616 (2012) (quotation marks and citation omitted). "A court's issuance of a preliminary injunction is generally considered equitable relief." *Id.* at 648 (quotation marks and citation omitted).

The party seeking a preliminary injunction must establish "that the traditional four elements favor the issuance of a preliminary injunction." *Id.* (quotation marks and citation omitted). In reaching its decision, the trial court must determine:

(1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. [*Id.* (quotation marks and citation omitted).]

As to the first factor, in light of this Court's decision in *Andary*, the trial court correctly considered that there was a likelihood that plaintiff would prevail on the merits of his declaratory

-4-

judgment action. As to the second factor, the trial court correctly determined that plaintiff, who is bed-bound, demonstrated that he would suffer irreparable harm if the preliminary injunction was not issued. Plaintiff requires 24-hour highly-skilled attendant care because of the nature of his injuries. Plaintiff presented an affidavit from his treating physician, Dr. Michael Yu, who stated that plaintiff requires around-the-clock care—at the practice level of a licensed practical nurse—which had been properly provided by the same attendant care providers for years and that any reduction in those services "would be devastating and life-threating" and that plaintiff "would die without the prescribed care." As to the third factor, the trial court correctly determined that plaintiff demonstrated that he would be harmed more—his health and welfare were at risk—by the absence of an injunction than defendant would be by the granting of this equitable relief. As plaintiff argued, the risk to plaintiff was physical harm and death while, at most, defendant could be financially harmed. And as to the fourth factor, the trial court correctly concluded that there was no potential harm to the public interest if the *preliminary* injunction was issued. Again, a preliminary injunction merely preserves the status quo while the underlying matter is pending. See *Hammel*, 297 Mich App at 647-648.

In summary, the trial court's decision to issue the preliminary injunction did not constitute an abuse of discretion, i.e., it did not fall outside the range of reasonable and principled outcomes. See *Mich Alliance for Retired Americans*, 334 Mich App at 262.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett