BENNETT v. COUNTY OF EATON.

1. APPEAL AND ERROR—DE NOVO HEARING OF CHANCERY CASES—
FINDINGS OF TRIAL COURT—WITNESSES—PERSONAL EXAMINATION.
The Supreme Court hears an equity case *de novo* but accords great consideration to the findings of the trial judge who hears the testimony, observes the witnesses and makes a personal examination of the area involved in suit to enjoin an alleged unlawful diversion and collection of surface waters.

2. WATERS AND WATERCOURSES—NATURAL FLOW.
A lower or servient estate must receive the surface water from the upper or dominant estate in its natural flow.

3. SAME—CONCENTRATION OF SURFACE WATERS—ARTIFICIAL DITCH.
A dominant estate owner has no right to concentrate surface water and pour it through an artificial ditch or drain in unusual quantities and greater velocity, upon an adjacent proprietor.

4. SAME—HIGHWAY IMPROVEMENT—DIVERSION OF SURFACE WATER
FROM LANDS OF ONE PERSON TO ANOTHER.
Public authorities may not, for the purpose of improving a highway, divert the natural course of surface water so as to impose upon the land of one person the servitude which naturally belongs upon the land of another.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 815, 895.
[2] 56 Am Jur, Waters § 68.
[3] 56 Am Jur, Waters § 71.
[4, 5] 56 Am Jur, Waters § 83.
[6] 56 Am Jur, Waters § 85.

5. SAME—HIGHWAY IMPROVEMENT—CONCENTRATION OF FLOW OF SURFACE WATERS.

> Public authorities may not, for the purpose of improving a highway, divert the surface water, that would in the natural state disperse over a large area and cast such in concentrated form upon the lands of the abutting owner to his damage without compensation.

6. SAME—INJUNCTION—SURFACE WATERS—DIVERSION—CONCENTRATION—RIGHT-OF-WAY.

> Plaintiff servient estate owners are entitled to an injunction to protect their premises either by the restoration of the same to the state in which they were prior to action of highway authorities who diverted surface waters from the lands of others and also concentrated the natural flow so as to damage plaintiffs' lands or by way of procurement of right-of-way over plaintiffs' lands for drainage purposes.

Appeal from Eaton; McDonald (Archie D.), J. Submitted June 9, 1954. (Docket No. 23, Calendar No. 46,017.) Decided September 8, 1954.

Bill by John Bennett and Gertrude Bennett against the County of Eaton and the Board of County Road Commissioners for injunction to protect property from unlawful flowing of water, and for damages. Damages denied. Decree for plaintiffs granting injunction. Defendants appeal. Affirmed.

*Richard E. Robinson,* for plaintiffs.

*Robert C. Carr,* for defendants.

BUTZEL, C. J. Plaintiffs, John and Gertrude Bennett, are owners of a farm situated on the east side of Canal road, at that point a north-south highway, in Eaton Rapids township, Eaton county, Michigan. Plaintiffs' northerly boundary is located 40 rods south of Petrieville road, an east-west highway which intersects Canal road approximately 80 rods to the north of plaintiffs' home. A third person not

a party to this litigation owns the land fronting on the east of Canal road between Petrieville road and plaintiffs' northerly boundary. Plaintiffs' home and farm buildings are situated 40 rods from the north boundary immediately to the east of Canal road. The southern boundary line of plaintiffs' farm intersects Canal road at a point 80 rods south of these buildings. Plaintiffs' frontage on Canal road is in total 120 rods. The farm land to the west of Canal road is owned by one Slade, not a party to this suit, whose home and buildings are approximately opposite those of plaintiffs. The present litigation concerns the drainage of surface water upon a portion of plaintiffs' land between plaintiffs' buildings and the northern boundary of their farm.

In the summer of 1949 the Eaton county road commission, defendant herein, reconstructed Canal road. Prior to that time Canal road was in poor condition, particularly during the spring of the year. At that time water ran down the middle of the road and collected on the road, vehicles became mired and the road was virtually impassable. The road had at times washed out. Canal Road as reconstructed is a crowned gravel road 30 feet in width and has at all times since 1949 been in good condition for vehicular traffic. Following the improvement of this road, ditches were constructed along both sides of the highway. Two tile culverts about 14 inches in diameter were placed under the road and connected the east and west ditches. One culvert about which plaintiffs admit no complaint could be made was placed near the point where plaintiffs' northerly boundary intersects Canal road. The second or south culvert was positioned, at John Bennett's request, at a point 100 feet north of the low spot where surface water in the spring formerly ran easterly across the highway onto plaintiffs' land. This culvert is located several rods north of the line of plain-

tiffs' buildings and carries water from the west ditch to the east ditch. The water in the east ditch drains on plaintiffs' fields. The water thus carried onto plaintiffs' land has created a 2-acre low marshy spot which is allegedly unfit for farming purposes. Previous to the installation of the south culvert drainage from the east ditch had not interfered with plaintiffs' farming.

For 25 years prior to the reconstruction of Canal road, waters from the westerly half of the road and the land to the west collected in the old west ditch and ran south to a point 8 to 10 rods south of the line of the Slade and Bennett buildings where the ditch ended. From that point the water followed a natural course and ran southwest to a low spot on the Slade property. Culverts in the west ditch under the 2 driveways to the Slade buildings permitted the water to pass in the southerly direction. Evidence in the case indicates that general debris had collected in the west ditch north of the culverts under the Slade driveways and evidently impeded the flow of water to the south. Some water that would normally have drained in the west ditch to the southwest low spot on the Slade property apparently backed up and ran through the south culvert onto plaintiffs' land.

Canal road curves to the west about 800 feet north of the south culvert. This curve in the highway is banked with a slope to the southwest. Plaintiffs contend that surface water collects there and cannot flow in the natural easterly direction due to the banking of the curve. The water runs into the ditch on the west side of the road, flows down the ditch and passes through the south culvert onto plaintiffs' land. Plaintiffs contend that this banked curve creates an artificial condition that collects and diverts the normal flow of surface waters. Plaintiffs further assert that the crowned highway acts as a

barrier to the normal easterly flow of surface water
and prevents the dispersion of the water over its
natural area of drainage. Plaintiffs contend that
the acts of the defendants constitute an unlawful
diversion and collection of surface waters, and that
through the south culvert the defendants have caused
to be cast upon plaintiffs' land (1) surface water
which in its natural course would have drained on
other lands away from plaintiffs' farm, and (2)
large concentrations of surface waters which would
in the natural state have drained in a dispersed
manner over plaintiffs' farm without damage to the
land. Plaintiffs filed a bill of complaint in the circuit
court for the county of Eaton praying for a manda-
tory injunction compelling the removal of the cul-
verts across Canal road. In addition plaintiffs sought
damages for the injury to their land in the amount of
$1,000. The lower court granted the injunction en-
joining the passage of water through the south cul-
vert but denied the claim for damages due to the in-
adequacy of the proofs. Plaintiffs have not filed a
cross appeal from the denial of the claim for dam-
ages.

Clarence Hoedeman, an engineer and surveyor em-
ployed by the defendant road commission, surveyed
the area and prepared a contour map which was sub-
mitted as part of the record in this case. This map
and Hoedeman's testimony shows that the fall of the
land in this area is toward the east and the south,
but the slope to the east is approximately 10 times
greater than that to the south. During cross-exami-
nation Hoedeman testified as follows:

"*Q.* Can you tell from your observations up there
if the land from the curve continued to fall off some
east?

"*A.* Yes, it would.

"*Q.* Then from the figures I have given and I be-
lieve you agreed that if the road were not there the

surface water would cross into, would drain general-
ly east and south, is that right?

"*A.* Generally speaking, yes.

"*Q.* In other words, it would be dispersed over a
much larger area than it now is, is that correct?

"*A.* Sure."

The natural flow of water off the highway north of
plaintiffs' northerly boundary would be to the east
and then toward the north to Petrieville road, across
lands owned by a third person. Hoedeman testified
that "if the road were not there the water coming
from around the curve and going about halfway
down to where Mr. Bennett's north boundary is
would go to the east and would not concentrate by
the house, as far as the survey shows."

The questions involved, as set forth by plaintiffs
and defendants on appeal, merely restate the factual
issues. Plaintiffs contend that the defendants have
diverted surface water from its natural direction of
flow, increased the amount of natural flow, and
cast such amount on plaintiffs' land in concentrated
quantities. In opposition, defendants contend that
there was no addition to natural flow and that the
culvert was placed at the approximate point where
the surface water had periodically formerly run
across the highway in the state of natural flow.

Although we hear an equity case *de novo,* we
should accord great consideration to the findings of
the trial judge who hears the testimony and observes
the witnesses. Particularly in the present case
should we do so where the findings of the trial judge
are based upon a personal examination of the area
involved in this litigation. *Robinson* v. *Belanger,*
332 Mich 657.

There is little dispute in regard to the law of sur-
face waters applicable to the instant case. Plain-
tiffs, as owners of the lower or servient estate, must
receive the surface water from the upper or dominant

estate in its natural flow. But as stated by this Court in *Peacock* v. *Stinchcomb,* 189 Mich 301, 307 :

"While one has a right to drain and dispose of the surface water upon his land, yet he cannot lawfully concentrate such water, and pour it through an artificial ditch or drain, in unusual quantities and greater velocity, upon an adjacent proprietor."

And in *Smith* v. *Township of Eaton,* 138 Mich 511, 513, 514:

"The principal question in controversy is whether, for the purpose of improving a highway, public authorities have a right to divert the natural course of surface water so as to impose upon the land of one person the servitude which naturally belongs upon the land of another. This question is answered in the negative by our own decisions. *Cubit* v. *O'Dett,* 51 Mich 347 ; *Breen* v. *Hyde,* 130 Mich 2."

See, also, *Ruehs* v. *Schantz,* 309 Mich 245 ; *Miller* v. *Zahn,* 264 Mich 306; *Maynard* v. *Hawley,* 331 Mich 123.

Defendants contend that *Maynard* v. *Hawley, supra,* is identical with the facts of the instant case and that the decision of that case should be controlling here. Two fundamental points of distinction in the *Maynard Case* are to be noted. A culvert had existed across the highway in *Maynard* since 1887 and the new culvert did not increase the drainage upon plaintiffs' land. Secondly, plaintiffs' land received only that surface water which it had received for many years. The denial of injunctive relief was therefore affirmed by this Court.

Defendants cite the case of *Tower* v. *Township of Somerset,* 143 Mich 195, wherein this Court stated (pp 201, 202):

" 'Highway commissioners have the right to have the surface water, falling or coming naturally upon the highway, drain through the natural and usual

channel upon and over the lower lands,' and may construct drains or ditches for that purpose.    2 Farnham on Waters and Water Rights, p 969."

In that case complainants' land was the servient estate and in the natural state received water flowing from the upper lands.   The proposed sluiceway in no way would have increased the amount of water that formerly naturally flowed across the highway and onto complainants' land; there was no diversion of surface water from the direction of natural flow onto the complainants' land.   Furthermore, the court there found that complainants would suffer no damage through the construction of the sluiceway by the township.

The principle of law enunciated in the *Tower Case* cannot be construed to give public authorities the right to divert surface water, that would in the natural state disperse over a large area, and cast such in concentrated form upon the lands of the abutting owner to his damage without compensation to him.   The rule of that case states that public authorities may construct sluiceways in the direction of natural flow of surface water and thereby permit water, that would in the natural state pass over the highway, to pass under the highway onto the lands of the lower owner.

Plaintiffs' complaint in this case, that the banked curve of Canal road to the north and the crowning of the highway collects and diverts the natural flow of surface waters, is supported by the record.   The record further supports plaintiffs' contention that the surface waters thus diverted are concentrated in the west ditch and flow upon plaintiffs' land through the south culvert, thereby rendering a portion of plaintiffs' farm land unfit for farming purposes.   We are not prepared to say that the public authorities, in the interest of sound highway engineering principles, may appropriate or ruin pri-

vate lands without compensation as a solution to highway drainage problems.

In *Sweeney* v. *Hillsdale County Board of Road Commissioners,* 293 Mich 624, at page 631, this Court stated:

"Plaintiff is entitled to the use of his premises in the usual and ordinary way and this right to the use of his premises is exclusive, and the highway commissioners have no right to interfere with such reasonable use. The authority vested in the board of county road commissioners never gave them any authority to appropriate the freehold of plaintiff, a private citizen, and, if they have done so, he is entitled to an injunction to protect his premises either by the restoration of the same to the state in which they were prior to the action of the highway authorities or by the highway authorities taking action to procure a right of way for drainage across the premises of Stevens, or otherwise."

The record presented to this Court is somewhat limited. We, of necessity, must therefore confine the scope of this opinion to the question presented on the facts disclosed by the record.

The decree of the lower court is affirmed, with costs to the plaintiffs.

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.