## LEWALLEN v CITY OF NILES

Docket No. 77-2531. Submitted June 14, 1978, at Grand Rapids.— Decided October 3, 1978.

Plaintiffs Noble F. Lewallen, Jane F. Lewallen, and others, brought suit to enjoin the City of Niles and Wolverine Sign Works from discharging surface waters upon their land. A temporary injunction was denied and the case set for trial. Before trial, the plaintiffs and the city reached an agreement allowing the city to be dismissed as a defendant. The Berrien Circuit Court, Zoe S. Burkholz, J., provided in its judgment that Wolverine be given 60 days in which to implement, at their cost, a plan to stabilize the erosive condition on plaintiffs' land and, if such a plan was not carried out, defendant was to be enjoined from concentrating or increasing the volume or velocity of its water flowing into the ravine on plaintiffs' land. Defendant was given reasonable access to plaintiffs' land to carry out the plan. Plaintiffs were allowed to seek monetary damages for any further erosion incurred subsequent to the date of the judgment and the time of implementation of the plan or injunction. Defendant appeals. *Held:*

The record, common sense, and the law fully support the trial court's grant of relief. Wolverine placed a greater burden on the servient estate than would have occurred naturally where Wolverine changed the grade of the land, paved a road so that it acted as a flume directing the water into a ravine on the plaintiffs' land, and removed the vegetation, thus getting water into the ravine faster and with greater force.

Affirmed.

1. Waters and Watercourses—Natural Flow—Real Property— Dominant Estates—Servient Estates.

The owner of a lower or servient estate must accept the surface water from the upper or dominant estate in its natural flow.

References for Points in Headnotes
[1-3] 78 Am Jur 2d, Waters §§ 10 *et seq.,* 119 *et seq.,* 128 *et seq.*
Modern status of rules governing interferences with drainage of surface waters. 59 ALR2d 421.
[3] 5 Am Jur 2d, Appeal and Error § 822.

2. WATERS AND WATERCOURSES—REAL PROPERTY—DOMINANT ESTATES
   —CHANGING CONDITIONS—SERVIENT ESTATES—SURFACE WATER.
   The owner of a dominant estate may not, by changing conditions
   on his land, put a greater burden on the servient estate by
   increasing and concentrating the volume and velocity of the
   surface water; the owner of the dominant estate has a duty to
   place no greater burden on the servient estate than would
   occur naturally.

3. APPEAL AND ERROR—COURT OF APPEALS—EQUITY—DE NOVO RE-
   VIEW—FINDINGS OF TRIAL COURT—SURFACE WATERS—REAL
   PROPERTY.
   The Court of Appeals reviews an equity case involving the
   discharge of surface waters upon real property *de novo* but
   accords great consideration to the findings of the trial court.

*Drew & Drew,* for plaintiffs.

*Warner, Norcross & Judd* (by *John H. Logie),* for
defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M.
BURNS and W. VAN VALKENBURG,* JJ.

PER CURIAM. Plaintiffs, three landowners in the
City of Niles, brought this suit in October of 1975
to enjoin the defendants, City of Niles and Wolve-
rine Sign Works, from discharging surface waters
upon their land. A temporary injunction was de-
nied and the case set for trial.

Before trial, plaintiffs and the city reached an
agreement allowing the city to be dismissed as a
defendant. The city agreed to divert the flow of
certain storm sewers away from plaintiffs' land.

The dispute continued between plaintiffs and
Wolverine Sign Works. Wolverine owns land
across a public street and higher than plaintiffs'
land. Wolverine is in the process of developing a
subdivision, Westfield Farms No. 2, on property

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

which was formerly farmland. The process of development has included grading the property, removal of substantially all of the vegetation, removal of a concrete collection box for water at the base of the drainpipe, and the paving of a road, Kensington. This development occurred after the suit was begun and after the temporary injunction was denied.

A ravine exists on plaintiffs' property. This ravine has acted as the natural drainage point of the land now owned by Wolverine for some time. A 20-inch pipe carries the water collecting at the corner of Wolverine's land under Wells Street and dumps it into the ravine on plaintiffs' property. Since the development of Wolverine's property began, there has been extensive and damaging erosion in the ravine. Although the pipe has emptied into the ravine for some time, the erosion damage is of fairly recent vintage and accelerating.

There is and has been no real dispute about the rules of law applicable to this suit. The owner of the lower or servient estate must accept surface water from the upper or dominant estate in its natural flow. By the same token, the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water. *Bennett v County of Eaton,* 340 Mich 330; 65 NW2d 794 (1954), *Emerald Valley Land Development Co v Diefenthaler,* 35 Mich App 346; 192 NW2d 673 (1971), *lv den,* 386 Mich 770 (1971), and cases collected therein.

The trial court heard the testimony, including expert testimony, of both parties and issued a lengthy opinion. In her factual conclusion she stated:

"* * * that under the past circumstances (prior to improvements) the erosive effect of Defendant's water had stabilized and there was no erosion; that the present existing conditions increased the flow and velocity of Defendant's water on Plaintiffs' land causing erosion and causing plaintiffs' ravine to be in a present unstable condition; that the future effect of Defendant's planned development will increase the flow and velocity of Defendant's water on Plaintiffs' land even more and more erosion will result; that the problems arose because of poor subdivision drainage design which allows too much of Defendant's water too fast to go upon Plaintiffs' land, and that proper design or present corrective measures could stabilize Plaintiffs' present erosive conditions."

In the judgment which followed, defendant was given 60 days in which to implement a plan to stabilize the erosive condition on plaintiffs' land and, if such a plan was not carried out, defendant was to be enjoined from increasing the volume or velocity of its water flowing into the ravine. Defendant was given reasonable access to plaintiffs' land to carry out the plan. Plaintiffs were allowed to seek monetary damages for any further erosion incurred subsequent to the date of the judgment and the time of implementation of the plan or injunction. Wolverine was not enjoined from carrying out its development or completing the subdivision. It was merely stopped from destroying plaintiffs' land in the process and bearing the cost of any plan which was necessary to achieve that result.

We review this type of case *de novo,* but give great consideration to the findings of the trial court. *Bennett v County of Eaton, supra.* The trial court's grant of relief was fully justified in this case. The record, common sense, and the law fully support her ruling. Changing the grade of the

land, paving a road so that it acts as a flume directing the water into the ravine, and removing the vegetation would all tend to get more water to the ravine faster and with greater force. This is exactly what cannot be done. Wolverine had a duty to place no greater burden on the servient estate than would occur naturally.

Affirmed. Costs to appellee.