*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY KAY, BRIAN KAY, JENSON EDWARD
KAY, and SOPHIA ANN KAY, by her Next Friend,
KELLY KAY,

Plaintiffs-Appellees,

v

JEFFREY A. HEYN and ANN M. HEYN,

Defendants,

and

JOSEPH SMITH and SANDRA SMITH,

Defendants-Appellants.

UNPUBLISHED
July 23, 2020

No. 348303
Oakland Circuit Court
LC No. 2017-160334-ND

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants Joseph Smith and Sandra Smith ("the Smiths") appeal by leave granted the trial court's order denying their motion for summary disposition of plaintiffs' claims for breach of an easement agreement, trespass, nuisance, and assault and battery.[1]  We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

In 2013, plaintiffs Kelly Kay and Brian Kay[2] purchased a home in Highland Township, Michigan, from defendants Jeffrey Heyn and Ann Heyn ("the Heyns").  The Smiths live next door

---

[1] *Kay v Heyn*, unpublished order of the Court of Appeals, issued June 5, 2019 (Docket No. 348303).

[2] The Kays' children are also party-plaintiffs to this action.  For purposes of this opinion, however, the term "plaintiffs" is used to refer only to Kelly and Brian Kay, unless indicated otherwise.

-1-

to plaintiffs, to the immediate north. Plaintiffs' and the Smiths' homes are built on a hill, and they share a driveway leading from their homes to the public road. The common driveway is subject to an easement agreement that was executed in 1927. The Smiths' portion of the driveway sits higher on the hill than plaintiffs' home, and the back of both parcels abuts a lake. The front entrance to plaintiffs' home has steps that go down into the home. In 2004, when plaintiffs' home was still owned by the Heyns, the Smiths modified their portion of the common driveway, with the Heyns' consent. According to the Smiths, their modification shortened and widened the driveway, increasing its total square footage, but did not alter its elevation or location.

In 2014, plaintiffs experienced problems with water runoff during a rain. Plaintiffs alleged that during heavy rains, water flowed down the Smiths' driveway into the front entrance of plaintiffs' home, causing water to enter the home. According to plaintiffs, the water infiltration caused mold problems, which in turn caused all four plaintiffs to experience health issues related to the mold. Plaintiffs allege that they made some unsuccessful efforts to persuade the Smiths to abate the water runoff problem. Plaintiffs also allege that they attempted to engineer their own system for diverting the water, but the Smiths interfered with those efforts; Joseph contended that plaintiffs' efforts were actually making the problem worse and interfering with traffic. Plaintiffs eventually moved out of their home and began residing in a small apartment above their detached garage.

Plaintiffs filed this action against the Heyns and the Smiths. They sued the Heyns for failure to disclose preexisting issues with water runoff from the Smiths' driveway. They brought claims against the Smiths for breach of the easement agreement, trespass, nuisance, and assault and battery. The latter claim was based on a physical confrontation between plaintiff Brian Kay and the Smiths. The parties dispute how the confrontation began, but it apparently involved Brian directing a leaf-blower at Joseph while Joseph directed a water hose at Brian, and it ended when Sandra intervened with a metal pole.

The Heyns and the Smiths each filed motions for summary disposition, and the trial court summarily denied both motions. This Court granted the Smiths' application for leave to appeal and stayed further proceedings pending resolution of this appeal.[3]

## II. STANDARD OF REVIEW

Preliminarily, the Smiths complain that the trial court decided their motion for summary disposition without oral argument and without providing any explanation for its decision. A court has discretion to dispense with oral arguments on motions, MCR 2.119(E)(3), and a court is not required to state its findings or conclusions of law when deciding motions, MCR 2.517(A)(3). We appreciate the Smiths' frustration, but we cannot find error, because we review a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). Furthermore, issues are preserved for this Court's review so long as

---

[3] The Heyns also filed an application for leave to appeal, but this Court denied the application "for failure to persuade the Court of the need for immediate appellate review." *Kay v Heyn*, unpublished order of the Court of Appeals, entered June 5, 2019 (Docket No. 348419). Therefore, only plaintiffs' claims against the Smiths are at issue in this appeal.

the appealing party brought them to the trial court's attention, irrespective of whether the trial court ruled on them. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

The Smiths moved for summary disposition under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). A court may not assess credibility or determine disputed facts when deciding a motion for summary disposition. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994), overruled in part on other grounds in *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999).

On de novo review, we conclude that the Smiths were entitled to summary disposition with respect to plaintiffs' claims for breach of the easement agreement and nuisance, but that summary disposition was properly denied with respect to plaintiffs' claims for trespass and assault and battery.

## III. BREACH OF THE EASEMENT AGREEMENT

Plaintiffs argue that the Smiths breached the easement agreement when they made changes to their portion of the shared driveway in 2004, which impacted the amount of water runoff from their driveway onto plaintiffs' land. We note that conflicting evidence was presented regarding whether the 2004 driveway changes actually had any effect on the amount of water runoff from the Smiths' driveway. However, that conflict is not material to a determination whether the Smiths breached the easement agreement when they made the changes to their driveway.

The easement agreement applies to the two parcels identified in the agreement: (1) the parcel formerly owned by the Heyns and sold to plaintiffs, and (2) the parcel owned by the Smiths. The agreement pertains to a common driveway shared by the two parcels. The parties agree that, pursuant to the plain language of the agreement, property owners may make changes and improvements to the portions of the driveway on their respective parcels, so long as the changes do not change the connection point to the other property's driveway, and a majority of the property owners agree to the changes. The submitted evidence establishes that Jeffrey Heyn consented to the Smiths' 2004 changes to their portion of the driveway, thereby satisfying the condition that a majority of the then property owners agree to any changes, and there is no claim that the changes affected the connection point with the driveway on the property then owned by the Heyns and now owned by plaintiffs. Thus, plaintiffs do not argue that the Smiths breached the plain language of the easement agreement, but rather that the Smiths breached an implied covenant of good faith and fair dealing. Although plaintiffs did not plead this theory in their complaint, we will address it to determine whether amendment of plaintiffs' complaint would be justified under MCR 2.116(I)(5) and MCR 2.118.

A covenant of good faith and fair dealing is an implied promise contained in every contract that a party shall not do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the agreement. *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992). The implied promise applies to discretionary performance under the contract and requires a party to exercise his discretion honestly and in good faith. *Ferrell v Vic Tanny Int'l, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984). However, this Court has held that Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 501; 892 NW2d 467 (2016); *Rodgers v JP Morgan Chase Bank NA*, 315 Mich App 301, 311; 890 NW2d 381 (2016); *Gorman v American Honda Motor Co*, 302 Mich App 113, 133-134; 839 NW2d 223 (2013). For purposes of resolving this appeal, we presume, although we do not decide, that it might be possible to bring a breach of contract claim premised on a breach of an implied covenant of good faith and fair dealing when a contract provides for a party's discretionary performance and the performing party acts in bad faith. See *Gorman*, 302 Mich App at 132-136; *Ferrell*, 137 Mich App at 243-244. Even if such an exception exists, it would not apply in this case.

Plaintiffs argue that the Smiths acted in bad faith by having multiple loads of dirt dumped on their property by a local contractor to change the direction of the driveway on their property, without consulting professionals to determine how the dirt placement would impact water runoff. In *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136-137; 393 NW2d 161 (1986), our Supreme Court explained that "bad faith" is a state of mind that is distinguishable from negligence or fraud. The evidence does not show that the Smiths acted recklessly, were indifferent to the consequences of their driveway modifications, or intentionally disregarded the possible consequences of their driveway modifications. See *Commercial Union Ins Co*, 426 Mich at 136. At most, the Smiths might have been negligent by relying solely on a contractor to place the dirt and not consulting other professionals, but possible negligence is not evidence of bad faith. Alternatively, although this is not a Uniform Commercial Code case, "bad faith" might mean the absence of "honesty in fact and the observance of reasonable commercial standards of fair dealing." MCL 440.1201(2)(t); *Gorman*, 302 Mich App at 132. However, there is no indication the Smiths engaged in dishonesty or did not deal fairly with the Heyns when the driveway was modified.

More significantly, however, the easement agreement did not provide the Smiths with unfettered discretion to make any changes to their driveway. On the contrary, it required the agreement of a majority of affected property owners. It is undisputed that Joseph Smith discussed the proposed changes with Jeffrey Heyn before making the changes, and Joseph obtained Jeffrey's consent to the changes. Moreover, Jeffrey conditioned his consent on the Smiths adding a drain to their property when making the changes, and the Smiths accommodated that request to increase the drainage capacity. Because the Smiths sought and obtained Jeffrey Heyn's consent to the driveway changes before they were made, and the Smiths accommodated Jeffrey's request to add a drain to their property, there is no basis for finding that the Smiths acted in bad faith.

Finally, plaintiffs did not own their property in 2004, when the driveway changes were made. Thus, there is no basis for finding that the Smiths acted in bad faith with respect to plaintiffs. Any subsequent incidents between plaintiffs and the Smiths, such as the Smiths not allowing others to clear drains on the Smiths' property, do not implicate the easement agreement. Those actions

are more appropriately considered under plaintiffs' other theories of relief. For these reasons, the trial court erred by denying the Smiths' motion for summary disposition with respect to plaintiffs' claim for breach of the easement agreement.

## IV. TRESPASS AND NUISANCE

The Smiths also argue that the trial court erred by denying summary disposition of plaintiffs' claims for trespass or nuisance. Plaintiffs alleged that the Smiths committed a trespass by allowing large amounts of water to flow from their driveway onto plaintiffs' property. "A trespass is an unauthorized invasion upon the private property of another." *D'Andrea v AT&T Mich*, 289 Mich App 70, 73; 795 NW2d 620 (2010) (quotation omitted). Plaintiffs also alleged that the Smiths' conduct of relocating their driveway and causing excessive amounts of water to flow onto plaintiffs' property constitutes a nuisance.

A party who disrupts the natural flow of water and diverts it to another person's property may be liable for trespass. In *Wiggins v City of Burton*, 291 Mich App 532, 563-565; 805 NW2d 517 (2011), this Court explained:

> It has been "the settled law of this State" for more than a century that the natural flow of surface waters from the upper, dominant estate forms a "natural servitude" that encumbers the lower, servient estate. *Carley v Jennings*, 131 Mich 385, 387; 91 NW 634 (1902); *Leidlein v Meyer*, 95 Mich 586, 589; 55 NW 367 (1893); see also *O'Connor v Hogan*, 140 Mich 613, 624; 104 NW 29 (1905); *Terlecki v Stewart*, 278 Mich App 644, 661; 754 NW2d 899 (2008); *Reed v Soltys*, 106 Mich App 341, 349; 308 NW2d 201 (1981). The owner of the lower, servient estate must bear this natural servitude, and is bound by law to accept the natural flow of surface waters from the upper, dominant estate. *Bennett v Eaton Co*, 340 Mich 330, 335-336; 65 NW2d 794 (1954); *Launstein v Launstein*, 150 Mich 524, 526; 114 NW 383 (1907); *Cranson v Snyder*, 137 Mich 340, 343; 100 NW 674 (1904); *Lewallen v City of Niles*, 86 Mich App 332, 334; 272 NW2d 350 (1978). It is similarly well settled, however, that "the owner of the upper estate has no right to increase the amount of water that would otherwise naturally flow onto the lower estate." *Kernen*, 232 Mich App at 512. For instance, it has been said that the owner of the upper estate "cannot, by artificial drains or ditches, collect the waters of . . . his premises, and cast them in a body upon the proprietor below him to his injury." *Gregory v Bush*, 64 Mich 37, 42; 31 NW 90 (1887). Nor may the owner of the upper estate "concentrate [the surface] water, and pour it through an artificial ditch or drain, in unusual quantities and greater velocity, upon an adjacent proprietor." *Peacock v Stinchcomb*, 189 Mich 301, 307; 155 NW 349 (1915); see also *Miller v Zahn*, 264 Mich 306, 307; 249 NW 862 (1933). Stated another way, "the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water." *Lewallen*, 86 Mich App at 334.
>
> By way of example, in *Schmidt*, 94 Mich App at 738, the trial testimony established that "as a result of the development of [the dominant estate], the water

runoff onto [the servient estate] was greatly increased, perhaps as much as six times the natural flow." The Schmidt Court stated the general rule:

> It is clear that the owner of the lower or servient estate must accept surface water from the upper or dominant estate in its natural flow, and equally clear that the owner of the dominant estate may not require the owner of the servient estate to accept a greater runoff by increasing or concentrating the flow. [*Id.*]

Because the owner of the dominant estate did not have an easement that permitted him to cast such "greatly increased" amounts of surface water upon the servient estate, this Court determined that he had exceeded the scope of the natural servitude that encumbered the servient estate and therefore affirmed the circuit court's entry of judgment in favor of the proprietors of the servient estate. *Id.* at 738-739.

> As these rules make clear, the Wiggins parcel is required to accept the surface-water runoff that naturally flows to it from the neighboring dominant estates. After all, as noted earlier, the natural flow of surface waters from the upper, dominant estate forms a "natural servitude" which arises by operation of law and encumbers the lower, servient estate. *Carley*, 131 Mich at 387. But, as in *Schmidt*, the dominant estates in the present case have no right to cast upon the Wiggins parcel more surface water than would naturally flow to it. [Footnote omitted.]

In *Wiggins*, this Court further stated that a trespass involving the flow of excess water onto the plaintiff's property "will not be actionable in nuisance because water is a physical, tangible object." *Wiggins*, 291 Mich App at 566-567.

The parties presented conflicting witness testimony regarding whether the Smiths' changes to their driveway impacted the natural flow of water from the Smiths' driveway onto plaintiffs' property. Plaintiffs submitted a report from Midwestern Consulting, LLC, which concluded that the changes to the driveway increased the flow of stormwater, the depth of the flow, and the peak flow rate. A report from James Partridge Consulting, LLC, also supported plaintiffs' claim that the changes to the Smiths' driveway diverted water from the Smiths' property onto plaintiffs' parcel. This evidence therefore establishes a question of fact whether the Smiths materially increased the natural flow of water from their property onto plaintiffs' property to support a claim for trespass. The trial court properly denied the Smiths' motion for summary disposition with respect to the trespass claim.

However, a claim for nuisance cannot be based on a physical intrusion, such as water runoff, as explained in *Wiggins*. Although plaintiffs accurately argue that there are different ways to prove nuisance, and a nuisance "need not involve a physical or tangible intrusion," a nuisance nevertheless involves a nontrespassory invasion of property rights. *Adkins v Thomas Solvent Co*, 440 Mich 293, 306, 306 n 12; 487 NW2d 715 (1992). Because plaintiffs rely solely on a trespassory invasion of their property—specifically, the flow of runoff water—to support their claim of nuisance, the trial court erred by denying the Smiths' motion for summary disposition with respect to the nuisance claim. *Wiggins*, 291 Mich App at 566-567.

## V. ASSAULT AND BATTERY

The Smiths also argue that they are entitled to summary disposition of plaintiffs' claim for assault and battery. We disagree. Plaintiff Brian Kay and defendant Joseph Smith presented conflicting versions of the incident that is the basis for the assault and battery claim. According to Brian, while he was blowing leaves in his yard, Joseph Smith intentionally sprayed him with a hose and continued to spray him in the face while looking directly at him. Brian said that Joseph even climbed from a hill onto his patio to spray him with the water. Brian said that Sandra Smith then grabbed a metal pole and struck him with it several times in the chest. Joseph admitted that he may have unintentionally sprayed Brain with the hose, but denied acting intentionally. Joseph claimed that Brian then approached him and directed the leaf blower at him, and that Sandra intervened only to protect Joseph from Brian.

The civil tort of assault and battery involves an intent to commit a battery or an intent to create a reasonable fear or apprehension of an immediate battery in the victim. *Mitchell v Daly*, 133 Mich App 414, 426-427; 350 NW2d 772 (1984). A person may use reasonable force in self-defense against an assault; and where a party was the initial aggressor, that party would have to show that the original victim used excessive or unreasonable force in self-defense. See M Civ JI 115.05; M Civ JI 115.06; *Anders v Clover*, 198 Mich 763, 766-767; 165 NW 640 (1917).

Brian's and Joseph's conflicting versions of the incident raise multiple questions of fact regarding who started the altercation, whether Joseph intentionally sprayed Brian with the hose, whether Brian became the aggressor by approaching Joseph, and whether Sandra assaulted Brian or was acting in defense of Joseph when she intervened and prodded Brian with the metal pole. Because of the many disputed issues of material fact related to this claim, the trial court properly denied the Smiths' motion for summary disposition with respect to this claim.

## VI. CONCLUSION

We affirm the trial court's denial of summary disposition with respect to plaintiffs' claims for trespass and assault and battery, but we reverse the trial court's denial of summary disposition with respect to plaintiffs' claims for breach of the easement agreement and nuisance. We remand this case for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause