*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY GOTTESMAN, on Behalf of Himself and
All Others Similarly Situated,

        Plaintiff-Appellee/Cross-Appellant,

v

CITY OF HARPER WOODS,

        Defendant-Appellant/Cross-
        Appellee.

UNPUBLISHED
December 3, 2019

No. 344568
Wayne Circuit Court
LC No. 17-014341-CZ

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order granting partial summary disposition in favor of plaintiff, and denying defendant's motion for partial summary disposition with respect to Count I of plaintiff's class action complaint, which alleged that defendant's storm water service charge (the Storm Water Charge or Charge) violates the Headlee Amendment, Const 1963, art 9, § 31. Plaintiff cross-appeals the trial court's later order denying his motion for partial summary disposition and granting defendant's motion for partial summary disposition on Counts II and III of the complaint, which alleged assumpsit and unjust enrichment based on defendant's alleged violation of MCL 141.91.[2] We affirm in part, reverse in part, and remand for further proceedings.

---

[1] See *Gottesman v Harper Woods*, unpublished order of the Court of Appeals, entered December 3, 2018 (Docket No. 344568).

[2] Plaintiff's cross-appeal also raises a challenge to the trial court's order denying, without prejudice, plaintiff's motion for an order awarding a refund and to enjoin defendant from imposing the Storm Water Charge in the future.

I. FACTS AND PROCEEDINGS

This case arises from plaintiff's challenge to the Storm Water Charge imposed by defendant on its property owners. Defendant's storm water and sanitary sewers are connected to the Northeast Sewage Disposal System (NESDS), a complex combined sewer system that serves several municipalities. Before reaching the NESDS, the flow from defendant's storm water sewers merges with combined storm water and waste water flow from other cities and then passes through the Milk River Intercounty Drain, also known as the Milk River System. When the level of flow is elevated, excess flow can be temporarily stored in a combined sewer overflow retention treatment basin within the Milk River System. If the retention basin reaches its capacity, the excess combined flow is treated and then discharged into public waters.

In 2014, the Michigan Department of Environmental Quality (MDEQ) called for improvement of the Milk River System to come into compliance with certain state and federal regulations. The estimated cost of the improvements exceeded $36 million, and defendant was apportioned nearly $17 million of that cost. To pay for the required improvements, defendant began assessing the Storm Water Charge under an ordinance it adopted in 1992 when the Milk River System required an earlier improvement. Section 27-110 of the ordinance provides:

> All owners of real property within the city, other than the city itself, shall be charged for the use of the stormwater system based on the amount of impervious area which is estimated and determined to be contributory to the stormwater system. The impact of the stormwater from the property on the system shall be determined on the basis of the flat rates contained in this article.

The flat rates are measured in terms of "residential equivalent unit[s]" (REUs), which § 27-100 of the ordinance defines as follows:

> That area of residential property defined to be impervious to account for the dwelling unit, garage, storage buildings or sheds, driveways, walks, patios, one-half of the street frontage and other impervious areas calculated to be an average by randomly sampling fifty (50) residential parcels that area being determined to be three thousand two hundred fifty (3,250) square feet.

Section 27-120 describes the following method for calculating the Storm Water Charge to be levied upon real property owners within the city:

> (a) The total cost of the debt retirement and operation and maintenance of the stormwater system shall be calculated annually in conjunction with the city's budget process and shall become an integral part thereof.

> (b) The amount of the total land area of commercially used property shall be determined. That amount shall then be divided by the residential equivalent unit (herein defined at three thousand two hundred fifty (3,250) square feet) to determine the total number of equivalent units for commercial property.

(c) The amount of total land area of institutionally used property that is impervious shall be determined. That amount shall then be divided by the residential equivalent unit (herein defined as three thousand two hundred fifty (3,250) square feet) to determine the total number of equivalent units for institutional property.

(d) The amounts determined from (b) and (c) above shall be added to the amount of residential parcels in the city (determined to be five thousand four hundred fifty (5,450) at the time of enactment of this article) to determine total number of equivalent units to be billed. That total shall then be divided into the total estimated amount of debt retirement and operation and maintenance costs, as defined in section 27-100, to determine the billing unit amount.

(e) Each parcel of real property in the city shall then be charged on the basis of their number of residential equivalent units times the billing unit amount.

With respect to vacant properties and residential parcels with less than 3,500 square feet in total land area, § 27-125 provides a schedule of reduced rates.[3] The Storm Water Charge is included as a user charge on all tax bills, § 27-130, and unpaid charges "constitute a lien against the property affected" and "shall be collected and treated in the same fashion as other tax liens against real property," § 27-135. Finally, § 27-140 provides property owners with the right to appeal the determination of a Storm Water Charge.

Plaintiff filed a class action complaint alleging several theories of liability against defendant, three of which are relevant to this appeal.[4] In Count I, plaintiff alleged a violation of the Headlee Amendment, Const 1963, art 9, § 31. In Count II, plaintiff alleged assumpsit for money had and received for an alleged violation of MCL 141.91,[5] and, in Count III, plaintiff

---

[3] Specifically, § 27-125 incorporates the following chart:

| Land Area (Square Feet) | Stormwater Service Charge |
| --- | --- |
| Residential property equal to or less than 300 sq. ft. and vacant property | No charge |
| Residential property equal to or less than 1,000 sq. ft. but greater than 300 sq. ft. | One-third billing unit |
| Residential property less than 3,500 sq. ft. but greater than 1,000 sq. ft. | One-half billing unit |
| Residential property equal to or greater than 3,500 sq. ft. | One billing unit |

[4] The trial court certified the plaintiff class on March 22, 2018.

[5] MCL 141.91 provides:

alleged unjust enrichment on the same basis. The trial court granted partial summary disposition in plaintiff's favor pursuant to MCR 2.116(C)(10) on the basis of its finding that the Charge is a tax that violates the Headlee Amendment. Defendant filed an interlocutory application for leave to appeal the trial court's decision on that issue. Thereafter, plaintiff moved for summary disposition on Counts II and III of his complaint. The trial court granted summary disposition in favor of defendant pursuant to MCR 2.116(I)(2) on those claims, finding that plaintiff had a legal remedy available that precluded resort to equitable remedies. Plaintiff subsequently filed a motion seeking a refund for the Headlee Amendment violation and to enjoin defendant from continuing to impose the Storm Water Charge. After this Court granted defendant's application for leave to appeal regarding the Headlee Amendment issue, the trial court denied plaintiff's motion for a refund and injunction without prejudice.

## II. DEFENDANT'S APPEAL

On appeal, defendant argues that the trial court erred by denying summary disposition in its favor on Count I because (1) the Storm Water Charge is a user fee, not a tax, and therefore, does not violate the Headlee Amendment; (2) it had authority to legally assess user charges under Chapter 21 of the Drain Code of 1956 (Drain Code), MCL 280.1 *et seq.*; and (3) the Storm Water Charge is authorized by defendant's 1951 Charter and, therefore, exempt from analysis under the Headlee Amendment.

## A. WHETHER THIS STORM WATER CHARGE IS A TAX OR A USER FEE

First, defendant argues that the trial court erred by denying summary disposition in its favor on Count I because the Storm Water Charge is not a tax as a matter of law. We disagree.

The grant or denial of summary disposition is reviewed "de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As stated in *Maiden*:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id.* at 120 (citations omitted).]

---

Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a tax, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964.

-4-

Whether a charge is a tax or a user fee is a question of law that is also reviewed de novo. *Bolt v City of Lansing*, 459 Mich 152, 158; 587 NW2d 264 (1998).

## 1. THE HEADLEE AMENDMENT AND THE *BOLT* FACTORS

The Headlee Amendment was adopted by referendum and became effective December 23, 1978. It amended Const 1963, art 9, § 6, and added §§ 25-34. *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 355-356; 604 NW2d 330 (2000). Const 1963, art 9, § 31, added the requirement of voter approval of new taxes. *Id*. at 356. It provides, in relevant part:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

If, however, a charge is a user fee, then it is not affected by the Headlee Amendment. *Bolt*, 459 Mich at 159.

As explained by our Supreme Court in *Bolt*, "[t]here is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment[,]" and doing so requires the consideration of several factors. *Id*. at 160-161. "Generally, a fee is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. A tax on the other hand, is designed to raise revenue." *Id*. at 161 (quotation marks and citations omitted). There are three main factors that are considered in distinguishing between a tax and a fee. *Id*. "The first criterion is that a user fee must serve a regulatory purpose rather than a revenue-raising purpose. A second, and related, criterion is that user fees must be proportionate to the necessary costs of the service." *Id*. at 161-162 (citations omitted). The third criterion is voluntariness. *Id*. at 162.

In *Bolt*, the Court considered a challenge to the city of Lansing's storm water service charge. *Id*. at 154. The city decided to separate its remaining combined sanitary and storm sewers, at a cost of $176 million over 30 years. *Id*. at 155. The project was financed through an annual storm water service charge, which was imposed on each parcel of real property using a formula that attempted to roughly estimate each parcel's storm water runoff. *Id*. "Estimated storm water runoff [was] calculated in terms of equivalent hydraulic area (EHA)," which was "based upon the amount of pervious and impervious areas within the parcel multiplied by the runoff factors applicable to each." *Id*. at 155-156 (quotation marks omitted). However, residential parcels that measured two acres or less were charged flat rates derived from a predetermined number of EHA units per 1,000 square feet. *Id*. at 156.

The Court concluded that the charge failed the first and second criteria because a major portion of the cost involved capital expenditures, which constituted "an investment in infrastructure as opposed to a fee designed simply to defray the cost of regulatory activity," and the city made no attempt to allocate the portion of the capital costs that would have a useful life in excess of 30 years to the general fund. *Id*. at 163-164. In addition, the Court concluded that the charges did not correspond to the benefits conferred because approximately 75% of property

owners were already served by separated storm and sanitary sewers, which many paid for through special assessments. *Id*. at 165. The charge, however, applied to all property owners, rather than only those who actually benefited. *Id*. Further, the improved water quality and avoidance of federal penalties were goals that benefited everyone, not just property owners within the city. *Id*. at 166. The Court also concluded that the ordinance lacked "a significant element of regulation" because it did not consider the presence of pollutants on each parcel, it failed to distinguish between those responsible for greater and lesser levels of runoff, and there was no end-of-pipe treatment before the storm water was discharged into the river. *Id*. at 166-167. With regard to the third criterion, the Court concluded that the charge lacked any element of voluntariness. *Id*. at 167. The Court also noted several additional factors supporting the conclusion that the charge was a tax, including that the "storm water enterprise fund" derived from the charge replaced the portion of the program that was previously funded through property and income taxes, the charge could be secured by placing a lien on property, and the charge was billed through the city assessor's office and could be sent with property tax statements. *Id*. at 168-169. Accordingly, the Court concluded that the storm water service charge was a tax and not a valid user fee. *Id*. at 169.

In *Jackson Co v City of Jackson*, 302 Mich App 90, 93; 836 NW2d 903 (2013), this Court similarly concluded that the city of Jackson's storm water management charge was a tax that was imposed in violation of the Headlee Amendment. The city of Jackson maintained and operated separate storm water and waste water management systems that were historically funded from general and street funds generated through the collection of various taxes and fees. *Id*. at 94. In 2011, however, the city adopted an ordinance that established a storm water utility to operate and maintain the storm water management program. *Id*. at 95. The program was funded through an annual storm water system management charge imposed on each parcel of real property. *Id*. The charge was calculated using a formula that estimated the amount of storm water runoff from each parcel. *Id*. Storm water runoff was again calculated in terms of EHA, which estimated the amount of storm water leaving each parcel based on the impervious and pervious surface areas. *Id*. at 95-96. Parcels with two acres or less were charged a flat rate. *Id*. at 96. Property owners could receive credits for actions taken to reduce storm water runoff, and an administrative appeal was also available. *Id*. at 97.

This Court concluded that the management charge served the dual purposes of financing the protection of waterways, as required by state and federal regulations, and general revenue-raising, but that the minimal regulatory purpose was outweighed by the revenue-raising purpose. *Id*. at 105-106. In particular, this Court concluded that, as in *Bolt*, the ordinance contained few provisions that truly regulated the discharge of storm and surface water runoff and failed to require the city or property owners to treat storm and surface water runoff. *Id*. at 106. This Court further concluded that the most significant motivation for adopting the ordinance and fee was to protect the city's general and street funds, which previously funded the city's activities. *Id*. at 106-107. This Court also concluded that there was a lack of correspondence between the charge and a particularized benefit conferred because the general public benefited in the same manner as the property owners who were required to pay the charge. *Id*. at 108-109. In addition, the charge lacked proportionality because it failed to consider property characteristics relevant to runoff generation and allowed the city to maintain a working capital reserve of 25% to 30% of the storm water utility's total expenses. *Id*. at 110-111. Finally, this Court concluded that the

charge was effectively compulsory and the lack of volition supported the conclusion that the management charge was a tax. *Id*. at 111-112.

In *Binns v City of Detroit*, unpublished per curiam opinion of the Court of Appeals, issued November 6, 2018 (Docket Nos. 337609; 339176),[6] this Court upheld a drainage charge assessed by the city of Detroit and its agencies, the Detroit Water and Sewage Department (DWSD) and the Detroit Board of Water Commissioners (BWC), in a case involving original actions under the Headlee Amendment. The city has a combined storm water runoff and waste water sewer system. *Id*. at 3. The combined sewage is treated before being released back into the environment and federal and state regulations required more than $1 billion in investments into the combined sewer overflow (CSO) facilities in order to prevent untreated sewage from spilling into public waterways. *Id*. In 2016, DWSD revised its method of calculating the drainage charge for property owners in Detroit based on impervious surface area. *Id*. at 4.

Applying the *Bolt* factors, this Court concluded that the city's drainage charge was a user fee rather than a tax. *Id*. at 14. First, this Court concluded that the drainage charge served a regulatory purpose, rather than a revenue-raising purpose, because the federally-mandated treatment of combined sewage constituted the provision of a service. *Id*. at 14-15. Therefore, "[t]he regulatory weakness identified in *Bolt* and *Jackson Co* concerning the release of untreated storm water back into the environment" was not present. *Id*. at 16. This Court further concluded that there was an adequate correspondence between the charges imposed and the benefits conferred because the charge benefited all property owners and the city's method of assessing the charge involved a high degree of precision. *Id*. This Court also concluded that there was no evidence of a revenue-raising purpose and the city had never used general fund expenses to pay for its combined sewer system treatment and disposal services. *Id*. at 16-17. Further, "the fact that the drainage charge [was] used in part to service debt incurred to pay for federally required capital investments [did] not by itself require the conclusion that the drainage charge constitutes a tax." *Id*. at 17. Unlike in *Bolt*, the charge was not used to fund future expenses for large-scale capital improvements, but rather "to amortize present debt costs incurred to pay for capital improvements in conformance with accepted accounting principles." *Id*. at 18.

With regard to the second *Bolt* factor, this Court concluded that the charge was reasonably proportionate to the necessary costs of service because it was calculated on the basis of aerial photography and city assessor data and no charge was imposed on parcels containing fewer than .02 impervious acres, which was the margin of error from flyover views. *Id*. at 18-19. In addition, there were procedures to dispute the impervious area measurement and substantial credits available to property owners who took steps to reduce the amount of storm water flowing from their properties into the DWSD sewer system. *Id*. at 19. Finally, this Court concluded that,

---

[6] Unpublished opinions are not binding under the rule of stare decisis, but may be considered for their instructive of persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). We further note that an application for leave to appeal this Court's decision in *Binns* is currently pending before the Supreme Court.

although the charge was effectively compulsory, this factor was not dispositive given its consideration of the other two factors. *Id*. at 20-21.

## 2. APPLICATION

With regard to the first factor, we must determine whether the Storm Water Charge serves a regulatory or revenue-raising purpose. See *Bolt*, 459 Mich at 161. In this case, a service is rendered in the form of removal and treatment of storm water runoff, and federal and state regulations have required improvements to the Milk Water System. Defendant has instituted the Storm Water Charge in order to pay for the required improvements. This indicates a regulatory component. *Binns*, unpub op at 14-15. In addition, unlike in *Bolt*, 459 Mich at 165, the improvements will benefit all property owners who are required to pay it.

On the other hand, there is also evidence of a revenue-generating purpose for the Charge. Before 1992, defendant levied ad valorem property taxes to pay for storm water costs. Thus, as was the case in *Bolt*, 459 Mich at 168, there is evidence that the Charge may have the effect of increasing revenues by omitting the storm water costs from the expenses covered by defendant's general fund. The question, however, is whether the revenue-generating purpose outweighs the regulatory purpose of the Charge. See *Jackson*, 302 Mich App at 106. In this case, despite the previous use of general funds, it appears that the primary motivating factor for the Storm Water Charge at issue was the improvements required by state and federal law. Therefore, like in *Binns*, unpub op at 14-16, the regulatory purpose is not minimal. However, as in *Bolt*, 459 Mich at 166-167, defendant's ordinance does not consider the presence of pollutants on each parcel or distinguish between those responsible for greater and lesser levels of runoff.

The use of the Storm Water Charge to, in part, service debt incurred to pay for the required improvements is another relevant consideration. See *Binns*, unpub op at 17. The fact that the Charge is used in part to service such debt does not by itself require the conclusion that the Storm Water Charge is a tax because the payment of debt can be part of the cost of providing service. In *Binns*, this Court concluded that the charge was not used to fund future expenses, but to amortize present debt costs incurred. See *id*. In this case, however, defendant has admitted that it has not yet been required to make its first payment on the project. The debt service charges will not be fully implemented until the completion of the project in 2019.[7]

---

[7] Plaintiff also presents a persuasive argument that defendant's ordinance does not allow debt service for the 2016 project. Section 27-150 provides that "[a]ll funds collected for stormwater service shall be placed in a separate fund and shall be used solely for the debt retirement, construction, operation, repair and maintenance of the stormwater system." Section 27-100 defines "debt retirement" as "[t]he annual required payment of principal and interest accrued to the City of Harper Woods by the Milk River Drainage Board for the city's proportionate share of the retirement of capital improvement bonds issued for the Milk River Improvement Project." It also defines the "Milk River Improvement Project" as "[t]hat project undertaken in 1991 by the Milk River Drainage District for increased retention and treatment of stormwater runoff generated primarily by the cities of Harper Woods and Grosse Pointe Woods." Harper Woods

With regard to the second factor, the charge must be reasonably proportionate to the costs of the service. See *Bolt*, 459 Mich at 161-162. Like in *Bolt*, 459 Mich at 156, and *Jackson*, 302 Mich App at 110, defendant determines the amount of the Storm Water Charge imposed on each property owner based on estimated figures. When the ordinance was adopted in 1992, defendant randomly sampled 50 residential parcels and determined that, on average, the residential parcels had 3,250 square feet of impervious areas. Based on that sampling, defendant's ordinance assumes that all residential properties in excess of 3,500 square feet have the same approximation of impervious area. The ordinance does not consider the individual characteristics of the property, such as pollutants, the type or extent of improvements thereon, or how said improvements affect the amount of runoff flowing from the property. Indeed, all residential properties that are not exempt from the Charge pay either one-third, one-half, or a full billing unit[8] based strictly on the square footage of the property, regardless of how much of the property is actually impervious or pervious. The Charge imposed for a commercial property is likewise based on the full property size, without accounting for the true nature of the particular property. Although mathematical precision is not required, *Jackson*, 302 Mich App at 109, defendant's inflexible approximation approach is a far cry from the more particularized method involving individual measurements of impervious areas this Court found acceptable in *Binns*, unpub op at 18-19. In further contrast to *Binns*, defendant's ordinance provides no exemption or financial incentive for property owners who are able to demonstrate that their properties contribute less storm water to the system as a result of various proactive measures.[9] *Id*. at 18. Also, as in *Bolt*, 459 Mich at 166, and *Jackson*, 302 Mich App at 108-109, the storm water system benefits not only the property owners who are subject to the Charge, but also the general public at large.[10] Moreover, based on the testimony of defendant's city manager, it appears that defendant is collecting far more than is required to operate the system, particularly given that its debt repayments have not yet become due.

With regard to the third factor, defendant concedes that the Storm Water Charge is not voluntary. While this factor is not dispositive, in this case the first factor presents a close question and the second factor supports the conclusion that the Storm Water Charge is a tax. In

---

Ordinance § 27-100. Although the question of whether defendant violated the ordinance is not before us, the suggestion that the Storm Water Charge violates the ordinance supports the conclusion that it is not a valid user fee.

[8] In 2016, a "billing unit" was $210.

[9] The ordinance permits a property owner to appeal the Storm Water Charge to the city manager and authorizes the city manager to "adjust such charges as he or she may deem appropriate when unusual or unique situations are presented and an adjustment is justified." Harper Woods Ordinance, § 27-140. The ordinance, however, provides no guidance as to what type of "unusual or unique situations" would warrant an adjustment or the extent of the available adjustment.

[10] While a benefit to the public at large does not always negate the regulatory character of a charge, "a charge is not a regulatory fee in the first instance unless it is designed to confer a particularized benefit on the property owners who must pay the fee." *Jackson*, 302 Mich App at 108.

addition, as in *Bolt*, 459 Mich at 168, the fact that the Storm Water Charge may be secured by placing a lien on property supports the conclusion that the Charge is a tax. Considering the totality of the circumstances, the trial court did not err by concluding that the Storm Water Charge is not a valid user fee, but a tax that violates the Headlee Amendment. Therefore, the trial court properly denied summary disposition in favor of defendant on Count I.

## B. WHETHER THE DRAIN CODE AUTHORIZED THE STORM WATER CHARGE

Next, defendant argues that the trial court erred by denying summary disposition in its favor on Count I because it could legally assess user charges to property owners under the Drain Code as a matter of law. We disagree.

Defendant argued below that the Storm Water Charge was authorized by Chapter 21 of the Drain Code and, therefore, did not violate the Headlee Amendment; however, the trial court did not address this issue. Nonetheless, "where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). Because the facts necessary to resolve this issue have been provided, we may consider it. The denial of a motion for summary disposition is reviewed de novo. *Maiden*, 461 Mich at 118. The proper interpretation of a statute is a question of law that is also reviewed de novo. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 97; 754 NW2d 259 (2008). Application of the Headlee Amendment is a question of law that is reviewed de novo. *Oakland Co v Michigan*, 456 Mich 144, 149; 566 NW2d 616 (1997) (opinion by KELLY, J.).

"The plain language of art 9, § 31, excludes from its scope the levying of a tax, or an increased rate of an existing tax, that was authorized by law when that section was ratified." *American Axle*, 461 Mich at 362. This is true even when the tax, although authorized, was "not being levied at the time Headlee was ratified and even though the circumstances making the tax or rate applicable did not exist before that date." *Id*. at 357. Thus, if the Charge in this case was a tax that was authorized under the Drain Code—a comprehensive act that predates ratification of the Headlee Amendment in 1978—then it does not violate the Headlee Amendment.

Defendant argues that the Storm Water Charge was authorized under § 539(4) of the Drain Code, which provides:

> This section shall not be construed to prevent the assessing of public corporations at large under this chapter. In place of or in addition to levying special assessments, the public corporation, under the same conditions and for the same purpose, may exact *connection, readiness to serve, availability, or service charges* to be paid by owners of land directly or indirectly connected with the drain project, or combination of projects, subject to [MCL 280.]489a. [MCL 280.539(4) (emphasis added).]

MCL 280.489a sets forth procedural prerequisites a public corporation must follow before filing a petition for construction of a drain project in the event it "determines that a part of the land in the public corporation will be especially benefited by a proposed drain so that a special assessment, fee, or charge may be levied by the public corporation . . . ." Defendant

acknowledges that it did not follow the procedures laid out in MCL 280.489a (or MCL 280.538a, the analogous statute concerning intercounty, as opposed to intracounty, drains). However, relying on *Downriver Plaza Group v Southgate*, 444 Mich 656, 663; 513 NW2d 807 (1994) (holding that city's authority to assess user fees was not impaired by failure to comply with prepetition procedure because compliance was impossible where construction of drain system was completed before MCL 280.489a went into effect), defendant argues that its noncompliance should be excused because the improvements to the Milk Water System were required by the MDEQ under MCL 280.423(3),[11] and did not arise from a drain project petition submitted to the Michigan Department of Agriculture and Rural Development.

We find defendant's reliance on MCL 280.539(4) unpersuasive. Moreover, it serves merely to distract from the critical issue before us, i.e., whether the Drain Code authorized a tax in the first place. Even if it was impossible for defendant to have complied with the procedural requirements set forth in the Drain Code, the fact remains that MCL 280.539(4) authorizes various types of *charges*; it does not authorize a *tax*. Consequently, and although we have concluded that the Storm Water Charge is a tax, it was not a tax authorized by the Drain Code, and the Drain Code therefore does not provide a basis for exempting the Charge from the requirements of the Headlee Amendment.

## C. WHETHER DEFENDANT'S CHARTER AUTHORIZED THE STORM WATER CHARGE

Finally, defendant argues that the trial court erred by denying its motion for summary disposition on Count I because the Storm Water Charge was authorized by its 1951 Charter and, therefore, is exempt from analysis under the Headlee Amendment. We disagree.

Defendant raised this argument below, but the trial court did not address it. As noted, however, "where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines*, 265 Mich App at 443-444. Because the facts necessary to address this issue have been provided, we may consider it. Again, both the denial of a motion for summary disposition, *Maiden*, 461 Mich at

---

[11] MCL 280.423(3) authorizes the MDEQ to issue an order of determination identifying unlawful discharge of sewage or waste, the user or users responsible for the unlawful discharge, and the necessity of remedial measures to purify the flow of the drain. In addition,

> [t]he order of determination constitutes a petition calling for the construction of disposal facilities or other appropriate measures by which the unlawful discharge may be abated or purified. The order of determination serving as a petition is in lieu of the determination of necessity by a drainage board pursuant to chapter 20 or 21 or section 122 or 192 or a determination of necessity by a board of determination pursuant to section 72 or 191, whichever is applicable. [MCL 280.423(3).]

118, and application of the Headlee Amendment, *Oakland Co*, 456 Mich at 149 (opinion by KELLY, J.), are subject to de novo review on appeal.

Again, the Headlee Amendment "excludes from its scope the levying of a tax, or an increased rate of an existing tax, that was authorized by law when that section was ratified." *American Axle*, 461 Mich at 362. Defendant relies on several provisions of its 1951 Charter that it argues provides pre-Headlee authorization for the Storm Water Charges. In particular, defendant relies on §§ 2.2, 14.1, 14.2, and 14.3 of the Charter. Section 2.2 provides, in relevant part:

> [T]he city shall have power with respect to and may, by ordinance and other lawful acts of its officers, provide for the following . . . :
>
> (f) *Street, alleys, and public ways*. The establishment and vacation of streets, alleys, public ways and other public places, and the use, regulation, improvement and control of the surface of such streets, alleys, public ways and other public places and of the space above and beneath them . . . .

Chapter 14 governs "Municipal Utilities." Section 14.1 gives defendant the power to improve and maintain public utilities for supplying water and sewage treatment. Section 14.2 gives the city council the power to fix just and reasonable rates and other charges to supply those public utility services. Section 14.3 provides that "[t]he council shall provide by ordinance for the collection of all public utility rates and charges of the city[,]" and further provides "[t]hat the city shall have as security for the collection of such utility rates and charges a lien upon the real property supplied by such utility[.]"

While the cited charter provisions give defendant the power to make improvements to the storm water system and also to set rates and charges for supplying water and sewage treatment, none of these provisions give defendant the authority to impose a tax. In *Bolt*, 459 Mich at 172-173 (BOYLE, J., dissenting), the dissent pointed out that the Lansing City Charter similarly allowed the city to operate and maintain public utilities and impose "just and reasonable rates" and other charges. The majority, although not expressly addressing the issue, did not conclude that there was pre-Headlee authorization for the tax at issue in that case. The majority did, however, note that "even though the city may be authorized to implement the system [under the Revenue Bond Act], its method of funding the system may not violate the Headlee Amendment." *Id*. at 168 n 17 (opinion of the Court). In contrast, in *American Axle*, 461 Mich at 360, the statute that provided pre-Headlee authorization expressly allowed for the assessment of the amount of a judgment on the "tax roll." Defendant's 1951 Charter did no such thing, but merely authorized certain "rates" and "charges." Therefore, we conclude that defendant's 1951 Charter did not provide pre-Headlee authorization for the tax imposed by defendant in this case, and that the trial court properly denied summary disposition in favor of defendant on Count I.

## III. PLAINTIFF'S CROSS-APPEAL

On cross-appeal, plaintiff argues that (1) he may plead and prove both legal and equitable theories of relief and obtain a recovery under both claims, and (2) after invalidating the Storm Water Charge, the trial court should have enjoined defendant from collecting the Charge in the future.

## A. EQUITABLE REMEDIES

First, plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on Counts II and III of his complaint because he is not prohibited from seeking equitable remedies for the alleged violation of MCL 141.91, in addition to pursuing relief under the Headlee Amendment. We agree.

The denial of a motion for summary disposition is reviewed de novo. *Maiden*, 461 Mich at 118. "Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22; 831 NW2d 897 (2012). In addition, this Court reviews trial court rulings regarding equitable matters de novo. *Id*.[12]

After the trial court granted plaintiff's motion for summary disposition on Count I, plaintiff filed a renewed motion for partial summary disposition on Counts II and III. Counts II and III of the complaint alleged claims for assumpsit and unjust enrichment based on the alleged violation of MCL 141.91. The trial court denied plaintiff's motion for summary disposition on Counts II and III, finding that there was a legal remedy available pursuant to MCL 600.308a and the Michigan Constitution, and instead granted summary disposition in favor of defendant under MCR 2.116(I)(2).

The trial court's ruling was based on the principle that "[e]quity does not apply when a statute controls." *Gleason v Kincaid*, 323 Mich App 308, 318; 917 NW2d 685 (2018). "In other words, when an adequate remedy is provided by statute, equitable relief is precluded." *Id*. As stated by our Supreme Court in *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010):

> A remedy at law, in order to preclude a suit in equity, must be complete and ample, and not doubtful and uncertain . . . . Furthermore, to preclude a suit in equity, a remedy at law, both in respect to its final relief and its modes of obtaining the relief, must be as effectual as the remedy which equity would confer under the circumstances . . . . [Quotation marks and citations omitted.]

Defendant does not dispute that plaintiff could seek both legal and equitable relief in his complaint. According to defendant, however, because plaintiff prevailed on his Headlee

---

[12] "An action for money received is one of assumpsit. It is, in many cases, a substitute for a bill in equity and is governed by equitable principles." *Lulgjuraj v Chrysler Corp*, 185 Mich App 539, 545; 463 NW2d 152 (1990).

Amendment claim, he cannot also recover on his unjust enrichment and assumpsit claims. Plaintiff, on the other hand, argues that his claims alleging a violation of MCL 141.91 are separate, there is no legal remedy available for a violation of MCL 141.91, and those claims are not subject to the same one-year limitations period as the Headlee Amendment claim.

The parties do not dispute that plaintiff's Headlee Amendment claim is subject to a one-year limitations period, see MCL 600.308a(3), whereas plaintiff's claims in Counts II and III for equitable relief are subject to a six-year limitations period, see MCL 600.5813. Accordingly, if plaintiff prevails on Counts II and III, he would be entitled to a refund of the Storm Water Charge since September 28, 2011 (six years before the complaint was filed). Given that plaintiff would be entitled to recover the Charge for several more years under Counts II and III than under Count I, we agree with plaintiff that the legal remedy available for the Headlee Amendment violation is not an adequate substitute for the remedy that equity would confer for the alleged violation of MCL 141.91. Therefore, even though plaintiff prevailed on Count I, he should have been permitted to pursue his claims in Counts II and III and the trial court erred by granting summary disposition in favor of defendant on those counts.[13]

## B. INJUNCTIVE RELIEF

Plaintiff also argues that the trial court abused its discretion by denying his request to enjoin defendant from collecting the Storm Water Charge in the future. We disagree.

"Granting injunctive relief is within the sound discretion of the trial court." *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998). This Court reviews the trial court's decision for an abuse of discretion. *Id.* "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted; alteration in original).

"Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Kernen*, 232 Mich App at 509 (quotation marks and citation omitted). In this case, the trial court denied plaintiff's request for an injunction without any explanation, other than noting that this Court had granted defendant's application for leave to appeal regarding the Headlee Amendment issue. By noting that leave had been granted, and denying the motion without prejudice, the trial court suggested that it merely believed injunctive relief was not proper *at that time*, but might be granted at a later date. The decision to deny injunctive relief until the interlocutory appeal regarding the Headlee Amendment issue was resolved was within the trial court's discretion and did not fall outside the range of reasonable and principled outcomes.

---

[13] The trial court did not otherwise address the elements of plaintiff's claims in Counts II and III. While plaintiff argues that those claims were established on the basis that the Storm Water Charge is a tax, he acknowledges that there could be a question of fact regarding the balance of equities. Therefore, those claims must be considered by the trial court on remand.

## IV. CONCLUSION

We affirm the trial court's order granting summary disposition in favor of plaintiff on Count I, reverse the order granting summary disposition in favor of defendant on Counts II and III, and remand to the trial court for further proceedings. We do not retain jurisdiction.


/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Mark T. Boonstra